Nabil SOLIMAN, Petitioner–Appellant,

v.

UNITED STATES of America, on behalf of INS, Respondent–Appellee.

No. 01–11313.

United States Court of Appeals, Eleventh Circuit.

July 11, 2002.

Elizabeth Barry Johnson, Birmingham, AL, for Petitioner–Appellant.

Christopher C. Fuller, Dept. of Justice/OIL, Paul D. Kovac, Mark C. Walters, Douglas E. Ginsburg, Lyle D. Jentzer, U.S. Dept. of Justice, Civil Litigation, Washington, DC, Shirley I. McCarty, Birmingham, AL, for Respondent–Appellee.

Before BIRCH and MARCUS, Circuit Judges, and FULLAM *, District Judge.

PER CURIAM:

Petitioner–Appellant Nabil Soliman appeals an order of the district court denying a motion construed as a petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2241. In his motion, Soliman argued (1) that his lengthy detention pending removal from the United States violated his rights under 8 U.S.C. § 1231(a)(6) and the Due Process Clause of the Constitution, and (2) that the Immigration and Naturalization Service ("INS") violated his constitutional rights to privacy and free expression by force-feeding him during hunger strikes undertaken to protest his detention. Because Soliman was removed from the United States and returned to his native country of Egypt on June 11, 2002, he is no longer being detained or force-fed by the INS. Consequently, his appeal is moot, depriving this Court of jurisdiction over the case. The appeal must therefore be dismissed and the district court's order vacated.

### I.

The relevant facts are straightforward. Soliman, a native and citizen of Egypt, entered the United States on a non-immigrant business visa in December 1988. After that visa expired in March 1989, Soliman remained in the country illegally. In May 1991, he applied for an adjustment of status to make his presence legal in light of his marriage to Martine Alexandre, an American citizen. While the INS was considering his application, Soliman twice received permission to leave the United States. He was paroled back into the country at the end of each trip, most recently in September 1992.

In May 1994, the INS denied Soliman's petition to adjust his status, and the Bureau of Immigration Appeals ("BIA") affirmed this decision in May 1997. Approximately one month later, the INS revoked Soliman's parole into the United States and served him with a Notice to Appear charging him with removability under Sec-

---

* Honorable John P. Fullam, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

tion 212(a)(7)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A), as an alien who, at the time of admission, was not in possession of a valid visa or other entry document. On July 1, 1997, Soliman was taken into INS custody.

At a hearing before an Immigration Judge ("IJ"), the INS presented evidence that Soliman was wanted in Egypt for his role in the 1981 assassination of Egyptian President Anwar Sadat. According to the Government's evidence, Soliman traveled from Egypt to Yemen, ostensibly for "trade purposes," shortly before Sadat was killed. Following the assassination, Soliman was charged and convicted in Egypt for participating in the murder plot, and he was sentenced in absentia to five years of hard labor. Soliman claimed in the INS proceedings that he was not involved in the assassination plot and that the Egyptian government has confused him with another individual, "Nabil Ahmad Farag Rizk." The Egyptian government, in documents forwarded to the United States Government, insists that Rizk is an alias for Soliman. At the hearing before the IJ, the Government also presented evidence that Soliman has been associated with several known terrorists in the United States. According to the Government, Soliman knew Sheikh Umar Abd-al Rahman, a radical Islamic cleric convicted of conspiring to blow up the World Trade Center and other national landmarks, and shared an apartment with Mohammad Salameh, who was convicted for his involvement in the 1993 World Trade Center bombing. Soliman has downplayed his connections to both individuals.

After the hearing, the IJ ordered Soliman removed. First, the IJ noted that Soliman's marriage provided no basis for relief from removal because his "relationship to his USA citizen wife was nothing but a sham, entered exclusively with the intent of obtaining an immigration benefit." The IJ also denied Soliman's application for asylum and withholding of removal upon finding that Soliman's testimony regarding the falsehood of the Egyptian charges was "lacking in credibility." The BIA affirmed the denial of asylum and withholding of removal in August 1998, but it vacated the designation of Egypt as the country of removal. According to the BIA, the proper removal country was Morocco, the last nation Soliman was in before arriving in the United States. Morocco, however, refused to accept Soliman.

While his appeal was pending before the BIA, Soliman requested withholding of removal under newly-promulgated regulations implementing Article 3 of the Convention Against Torture and Other Cruel or Degrading Punishment ("Torture Convention"). The IJ granted this request based on information indicating that Soliman would be tortured in Egypt. On May 4, 2000, however, the BIA held that Soliman was ineligible for withholding of removal because he "committed a serious non-political crime" in Egypt, which included participating in the assassination of Sadat and the attempted assassinations of other officials, attempting an armed revolution, storming police stations and government buildings, and illegally purchasing and possessing arms, explosives, and ammunition. Despite finding Soliman ineligible for withholding of removal, the BIA granted the limited relief of deferral of removal to Egypt on the ground that "it is more likely than not that [Soliman] will suffer torture at the hands of Egyptian authorities if he is removed to Egypt." Soliman did not appeal the BIA's final order.

Following the final order, the INS attempted to remove Soliman to a number of countries, including Saudi Arabia, Angola, Afghanistan, Pakistan, Singapore, and Thailand. Because no country would ac-

cept him, Soliman remained in INS detention. In December 1999, he commenced a hunger strike at an INS facility in Batavia, New York to protest his detention. He continued the hunger strike at another facility in Columbia, South Carolina, and began another strike at the Etowah County Detention Center in Alabama on August 8, 2000. After Soliman became unresponsive to verbal commands, INS officials fed him with intravenous fluids on August 11, 2000. When he refused further medical treatment, the INS obtained an order authorizing force-feeding and non-consensual medical treatment from the United States District Court for the Northern District of Alabama.

After briefly being transferred to and from South Carolina, Soliman began another hunger strike at the Etowah County facility in November 2000. When he was again force-fed, he sought an order barring force-feeding from the same district court that had issued the earlier authorization. The district court construed Soliman's motion as a request to reconsider the earlier force-feeding order and as a petition for a writ of habeas corpus challenging his continued detention. On February 15, 2001, the district court denied Soliman's motions, holding that the INS had statutory and constitutional authority to detain Soliman, potentially indefinitely, as an inadmissible alien subject to a final order of removal, and that Soliman had no constitutional right to be free from force-feeding performed with a tube or intravenous device. *See In re Soliman*, 134 F.Supp.2d 1238 (N.D.Ala.2001).

Soliman appealed to this Court. With regard to the detention, Soliman argued that his prolonged custody for more than six months after his removal order became final violated 8 U.S.C. § 1231, as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), as well as his rights under the Due Process Clause of the Constitution. Soliman also claimed that the force-feeding by INS officials deprived him of his constitutional rights to free expression and bodily privacy. The Government responded that the detention of Soliman, an inadmissible alien, was legal because *Zadvydas*'s six-month limitation does not apply to inadmissible aliens under federal immigration statutes and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953). The Government also argued that Soliman had no due process right as an inadmissible alien to be released from even prolonged detention, and that any right to avoid force-feeding was outweighed by the INS's legitimate interest in keeping him alive.

■ On May 13, 2002, shortly before oral argument in this case, the INS district director sent Soliman a letter informing him that the Attorney General was considering lifting his deferral of removal to Egypt on the ground that the Secretary of State had received assurances from the Egyptian government that Soliman would not be tortured if he were returned there. This information was repeated in an INS notice of "Decision to Continue Detention" issued to Soliman the day before oral argument, May 23, 2002. On June 4, 2002, Soliman filed in this Court an emergency motion to stay his removal from the United States, and we denied that motion on June 6, 2002.[1] Five days later, on June 11,

---

1. We denied the emergency motion for a stay because, under the controlling statute and the accompanying regulations promulgated thereunder, as well as the case law interpreting the statute and regulations, a Court of Appeals lacks jurisdiction to review the Attorney General's decision to lift a deferral of removal under the Torture Convention in the absence of a petition to review a final order of removal. Notably, Soliman has never sought such review of his May 4, 2000 final order of removal. Consequently, we lacked jurisdic-

Soliman was removed to Egypt. The Government then moved to dismiss the appeal as moot.

## II.

As we have explained on many occasions, Article III of the Constitution limits the jurisdiction of federal courts to the consideration of "Cases" and "Controversies." U.S. Const. art III, § 2. In turn, the "case or controversy" constraint imposes on federal courts a "dual limitation" known as "justiciability." *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 621 (11th Cir.1994). "The doctrine of justiciability prevents courts from encroaching on the powers of the elected branches of government and guarantees that courts consider only matters presented in an actual adversarial context." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir.2001). Article III's case or controversy requirement provides "an important restriction on the power of the federal courts," which is necessary "[b]ecause the judiciary is unelected and unrepresentative." *Id.* (quoting *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir.1998)) (internal quotations omitted); *see also Allen v. Wright*, 468 U.S. 737–38, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) ("[T]he 'case or controversy' requirement defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded.").

The doctrine of mootness derives directly from the case or controversy limitation because "an action that is moot cannot be characterized as an active case or controversy." *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). As this Court has explained, "[p]ut another way, 'a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehab. Servs.*, 225 F.3d 1208, 1216–17 (11th Cir.2000) (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir.1993)). Therefore, "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Al Najjar*, 273 F.3d at 1336. In fact, "dismissal is required because mootness is jurisdictional." *Id.* (citing, e.g., *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) ("The question of mootness is ... one which a federal court must resolve before it assumes jurisdiction.")). "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Florida Ass'n of Rehab. Facilities*, 225 F.3d at 1217.

Although there is an exception to the mootness doctrine when the action being challenged by the lawsuit is capable of being repeated *and* evading review, we have held that "this exception is 'narrow,' and applies only in 'exceptional situations.'" *AL Najjar*, 273 F.3d at 1336 (quoting *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1256 (11th Cir.2001)) (internal quotations omitted). In particular, the exception can be invoked only when "(1) there [is] a reasonable expectation or a

tion over the emergency motion. *See* Foreign Affairs Reform and Restructuring Act of 1998, Pub.L. No. 105–277, § 2242(2), 112 Stat. 2681; 8 C.F.R. § 208.18(e)(1); *see also, e.g.,*

*Ali v. Reno*, 237 F.3d 591, 596 (6th Cir.2001); *Khourassany v. INS*, 208 F.3d 1096, 1099 (9th Cir.2000).

demonstrated probability that the *same* controversy will recur involving the *same* complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *Sierra Club v. Martin,* 110 F.3d 1551, 1554 (11th Cir.1997) (emphasis added). Simply put, "[t]he remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." *Al Najjar,* 273 F.3d at 1336.

 In light of these principles, it is abundantly clear that Soliman's appeal is now moot because there exists no active case or controversy. On appeal, Soliman requests two types of relief: first, he asks to be released from detention pending his removal from the United States; second, he seeks to stop INS officials from force-feeding him during his detention. Since he was removed from the United States to Egypt on June 11, 2001, Soliman is no longer being detained by the INS, and he is, of course, no longer being force-fed by INS officials. Because Soliman is not being detained by the INS (or any United States Government entity for that matter), no order from this Court requiring the INS to release him into the community awaiting his final removal could have any effect. Similarly, because Soliman is no longer being force-fed, no order barring his force-feeding could possibly have any effect. Any opinion regarding Soliman's challenge to his detention or his challenge to the force-feeding would "would be purely advisory. This appeal is therefore moot." *Id.* at 1339 (citation omitted). Quite simply, "there is nothing for us to remedy, even if we were disposed to do so." *Spencer v. Kemna,* 523 U.S. 1, 18, 118 S.Ct. 978, 988, 140 L.Ed.2d 43 (1998).

Furthermore, since Soliman has been removed from the United States and there is absolutely no reason to believe that he will again be detained or force-fed under the same circumstances, the narrow exception for cases that are capable of repetition yet evading review does not apply. That exception can be invoked "only in the exceptional circumstance in which the same controversy will recur and there will be inadequate time to litigate it prior to its cessation." *AL Najjar,* 273 F.3d at 1340. Plainly, neither basis for the exception exists in this case.[2]

 Under our precedent, when a case becomes moot on appeal, the Court of Appeals must not only dismiss the case, but also vacate the district court's order. *See id.* This practice "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." *Atlanta Gas Light Co. v. Fed. Energy Regulatory Comm'n,* 140 F.3d 1392, 1402 (11th Cir.1998) (quoting *United States v. Munsingwear,* 340 U.S. 36, 40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950)). The policy of vacating the underlying judgment is "premised on the equitable principle that 'a party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought

---

**2.** The instant case is different from *Moore v. Ashcroft,* 251 F.3d 919 (11th Cir.2001), in which we held that an alien's removal does not deprive us of jurisdiction over a challenge to a final order of removal. In *Moore,* we explained that such an appeal does not become moot after the execution of removal because, if that removal was carried out in error, we can still grant meaningful relief that would allow the petitioner to return to the

United States. *See id.* at 922. In this case, on the other hand, Soliman does not challenge his final order of removal. Instead, he challenges *only* his detention pending removal and the Government's force-feeding efforts. Because both the detention and the force-feeding have ceased with Soliman's return to Egypt, we are unable to provide him with any relief, let alone meaningful relief.

not in fairness be forced to acquiesce in the judgment.'" *Id.* at 1403 (quoting *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25, 115 S.Ct. 386, 391, 130 L.Ed.2d 233 (1994)). It is only the "vagaries of circumstance," namely that Soliman has been removed from the United States and his detention and force-feeding terminated, that prevent this Court from deciding the instant appeal. Therefore, regardless of its correctness (and we offer no opinion as to the issues raised on appeal), the district court's order must be vacated.

Because no live case or controversy exists following Soliman's removal, the appeal is DISMISSED as moot, and the order of the district court is VACATED.[3]

---

**3.** At oral argument, the panel requested supplemental briefing regarding the effect, if any, of two documents prepared, but never released, by INS notifying Soliman of his release pending removal, as well as the May 23, 2002 decision to continue detention. In light of our disposition of the case, the INS's request to hold any supplemental briefing in abeyance is GRANTED. Such briefing is no longer necessary since the case has become moot.