**Waseem DAKER, Plaintiff,**

v.

**Jim WETHERINGTON, et al., Defendants.**

**Yusha Abdul–Quddus, Plaintiff,**

v.

**Jim Wetherington, et al., Defendants.**

**Civil Action No. 1:01–CV–3257–RWS.**

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 16, 2007.

---

Waseem Daker, Duluth, GA, Pro Se Plaintiff.

Yusha Abdul–Quddus, Folkston, GA, Pro Se Intervenor Plaintiff.

Beverly Patricia Downing, Kathleen Mary Pacious, Thurbert Baker, Office of State Attorney General, Atlanta, GA, John C. Jones, Freeman Mathis & Gary, Atlanta, GA, LaRonica K. Lightfoot, State of Georgia Law Department, Atlanta, GA, for Defendant.

## ORDER

STORY, District Judge.

This case comes before the Court for consideration of the following motions: (i) Yusha Abdul–Quddus's Motion for Summary Judgment [290]; (ii) Defendants' Motion for Extension of Time [292]; and (iii) Defendants' Motion for Summary Judgment [294]. These Motions are presently docketed as the motions of Intervenor–Plaintiff Abdul–Quddus in *Daker v. Wetherington*, No. 1:01–CV–3257–RWS. But as the result of this Order, Mr. Abdul–Quddus will no longer be permitted to intervene in *Daker v. Wetherington*. Instead, as explained in more detail below, the Court will open a new civil rights action and resolve Mr. Abdul–Quddus's claims as Plaintiff in that action. After its review of the record, the Court enters the following Order.

## Background

Plaintiff Abdul–Quddus, an inmate currently incarcerated at D. Ray James State Prison and proceeding *pro se*, alleges pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc–1, *et seq.* ("RLUIPA"), that his religious beliefs were not accommodated adequately while he was incarcerated at several prison facilities operated by the Georgia Department of Corrections. Plaintiff sues Commissioner Jim Wetherington, the Georgia Department of Corrections ("GDC"), Warden Michelle Martin, Deputy Warden Cynthia Nelson, and Deputy Frank Turner.

Since 1999, Plaintiff Abdul–Quddus has been incarcerated in four prison facilities. Plaintiff challenges three policies that either are or at one time were maintained by wardens at these four facilities, arguing that these policies impede on his religious exercise as a Muslim and violate RLUIPA, the First Amendment, and/or the Equal Protection Clause. First, Plaintiff Abdul–Quddus challenges a shaving requirement that is imposed state-wide by the GDC and to which he has been subjected during his incarceration from 1999 to the present. Second, Plaintiff opposes being required to recite a "Code of Ethics" during inspection, which he claims he was required to do during his incarceration at Arrendale State Prison between 1999–2001. (*See* Pl. Abdul–Quddus's Statement of Material Facts [290–3] ¶ 8.) Plaintiff does not, however, dispute Defendants' assertion that, since 2001, he has not been required to recite a "Code of Ethics." (*See* Pl. Abdul–Quddus's Resp. to Defs.' Mot. for Summ. J. [296–1] at 22.) Thirdly, Plaintiff challenges the denial of weekly Ta'lim, an Islamic educational class. Plaintiff claims that he was denied Ta'lim while incarcerated at Arrendale State Prison from 1999–2001; while incarcerated at Hancock State Prison between 2001–2005; and while incarcerated at Spalding County Correctional Institution between 2005–2006. (*See* Third Aff. Of Pl. Abdul–Quddus [296–1] ¶ 2.) He concedes, however, that since being transferred to D. Ray James State Prison in early 2006, he has been allowed Ta'lim. (*See* Pl. Abdul–Quddus's Resp. to Defs.' Mot. for Summ. J. [296–1] at 19.)

After correcting the procedural posture of this case, the Court takes up the parties' motions for summary judgment.

## Discussion

### I. Preliminary Matters

#### A. Procedural Posture/Docket Correction

■ On June 30, 2005, this Court entered an Order allowing Mr. Yusha Abdul–Quddus to intervene as of right in *Daker v. Wetherington*, No. 1:01–CV–3257–RWS (N.D. Ga. filed Nov. 28, 2001), pursuant to FED.R.CIV.P. 24(a)(2), as an intervenor-plaintiff.[1] *See Daker v. Wetherington*, No. 1:01–CV–3257–RWS, slip. op. at 7 (N.D.Ga. Jun. 30, 2005). Having had an opportunity to further consider the issues pertaining to Mr. Abdul–Quddus's intervention, however, the Court now concludes that it should not have permitted intervention. Rather, to comply with the mandates of the Prison Litigation Reform Act, *see* 28 U.S.C. § 1915 *et seq.* ("PLRA"), the Court should have required Mr. Abdul–Quddus to file his own civil action and tender the requisite filing fee.

This Court has recently considered the issue of whether, under the PLRA, a prisoner may intervene as of right under Rule 24 in another prisoner's action. *See Daker v. Ferrero*, No. 1:03–CV–02481–RWS, slip op. at 6–8 (N.D.Ga. Jan.3, 2007). Relying on the Eleventh Circuit's decision in *Hubbard v. Haley*, 262 F.3d 1194, 1197–98 (11th Cir.2001), this Court concluded that the PLRA precluded intervention under Rule 24. It explained:

---

1. This Court had previously denied Mr. Yusha Abdul–Quddus's Motion to Intervene, *see Daker v. Wetherington*, No. 1:01–CV–3257–RWS, slip. op. at 9–15 (N.D.Ga. Mar. 25, 2004), but on June 13, 2005, the Eleventh Circuit Court of Appeals vacated and remanded that Order. (*See* Judgment of U.S. Court of Appeals of June 13, 2005[256].) After reconsidering its prior Order, this Court concluded that Mr. Abdul–Quddus had met the requirements of Rule 24(a)(2) and was entitled to intervene as of right. *See Daker v. Wetherington*, No. 1:01–CV–3257–RWS, slip. op. at 3–7 (N.D.Ga. Jun. 30, 2005).

Under the [PLRA], prisoners who file civil actions in federal courts are required to pay full filing fees. *Id.* In *Hubbard v. Haley*, the Eleventh Circuit held that a district court properly dismissed an action in which three prisoners sought to join their claims pursuant to Rule 20 of the Federal Rules of Civil Procedure because such a permissive joinder would violate the PLRA's requirement that "each prisoner pay the full filing fee." 262 F.3d 1194, 1197–98 (11th Cir.2001) (citing 28 U.S.C. § 1915(b)), cert. denied, 534 U.S. 1136, 122 S.Ct. 1083, 151 L.Ed.2d 983 (2002). To the extent the PLRA conflicts with Rule 20, the court held that "the statute repeals the Rule." *Id.* at 1198.

.        .        .        .        .

Here, it is clear that applying Rule 24 to allow [intervention] would circumvent the PLRA's requirement [of] a full filing fee and undermine the Eleventh Circuit's rationale in *Hubbard.* By allowing intervention in this context, a prisoner ... could avoid the anti-joinder rule by simply waiting until an action was filed and then intervening under Rule 24. In this case, because of the similar interest of Plaintiff and [the proposed intervenor] and the potential *stare decisis* effect of this Court's resolution of Plaintiff's challenge to the Central State Prison stand-at-attention policy, that is likely to be the case: [The proposed intervenor] would achieve through intervention what he could not achieve through joinder. The Court declines to adopt such a procedural inconsistency. To the extent Rule 24 conflicts with the filing-fee requirement of the PLRA, the Court concludes "the statute repeals the Rule." *See Hubbard,* 262 F.3d at 1198.

*Daker v. Ferrero,* No. 1:03–CV–02481–RWS, slip op. at 6–8 (N.D.Ga. Jan.3, 2007).

This Court also rejected the proposed intervenor's offer to pay his own full filing fee to intervene in *Daker v. Ferrero,* concluding that collecting multiple filing fees in a single action would run afoul of the reasoning of *Hubbard* and the explicit text of the PLRA. The Court explained:

[The proposed intervenor,] apparently recognizing the tension between his assertion and *Hubbard,* has offered to pay his filing fee to intervene in this case. While the Court has on its own accord found some authority for his position, [*see, e.g., Boriboune v. Berge,* 391 F.3d 852, 855–56 (7th Cir.2004) (Easterbrook, J.) (allowing collection of multiple filing fees in single action joined under Rule 20) ], a close reading of *Hubbard* and the PLRA compel the conclusion that this option, at least within the Eleventh Circuit, is not available.... First, *Hubbard* reasoned that Congress, in enacting the PLRA, "repeal[ed]" Rule 20 insofar is it applies to actions governed by the PLRA. *Hubbard,* 262 F.3d at 1198. Thus, the Eleventh Circuit concluded, because the procedural device of joinder was unavailable to the plaintiffs in *Hubbard,* the district court properly dismissed their actions without prejudice. The same rationale applies here: Rule 24, insofar as it operates to circumvent the PLRA's requirement that prisoners tender a filing fee, has been repealed by the PLRA....

Second, the text of the PLRA itself would seem to foreclose the possibility ... that a court accept multiple filing fees in a single action. Subsection (b)(3) of the PLRA states: "In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment." 28 U.S.C. § 1915(b)(3). By allowing each plaintiff to pay his own fee in a single action, the "filing fee collected" would exceed the amount normally

permitted in a civil action. *See Oster-loth v. Hopwood,* No. CV 06 152 M JCL, 2006 WL 3337505 (D.Mont. Nov.15, 2006) (noting that to allow joinder of prisoner actions would run afoul of the requirement of 28 U.S.C. § 1915(b)(3)).

For these reasons, the Court concludes that [the proposed intervenor] is not entitled as of right to intervene in this action pursuant to Rule 24(a). Rather, [he] may pursue his own action and tender the requisite filing fee.

*Id.* at 8–9.

Here, although the parties did not raise the Eleventh Circuit's decision in *Hubbard* in their initial briefing on this issue, the Court now concludes that the intervention of Mr. Abdul–Quddus in *Daker v. Wetherington* was not permissible. Rather, Mr. Adbul–Quddus should have been directed to file a new action and tender the requisite filing fee.[2] The Court now corrects this error, and directs the Clerk to open a new civil rights action on behalf of Mr. Abdul–Quddus.

In reliance on this June 30, 2005 Order, however, the parties have completed discovery and fully briefed for purposes of summary judgment the claims asserted by Mr. Abdul–Quddus. The Court will therefore *not require* Mr. Abdul–Quddus or Defendants to resubmit any pleadings associated with Mr. Abdul–Quddus's claims. Instead, the Court construes the factual allegations contained in Plaintiff's three affidavits and his Statement of Material Facts as his Complaint in *Abdul–Quddus v. Wetherington. (See* Aff. of Pl. Abdul–Quddus [263–3]; Second Aff. of Pl. Abdul–Quddus [265–2]; Third Aff. of Pl. Abdul–Quddus [296–1]; Pl. Abdul–Quddus Statement of Material Facts [290–3].) Because

discovery has been completed and the parties' motions for summary judgment are ripe for decision, the Court addresses those motions below.

Accordingly, the Clerk is **DIRECTED** to **OPEN** a new civil rights action on behalf of Mr. Yusha Abdul–Quddus styled *Yusha Abdul–Quddus v. Wetherington, et al.* It is **FURTHER ORDERED** that all filings and pending Motions relating to the claims of Mr. Yusha Abdul–Quddus in *Daker v. Wetherington,* No. 1:01–CV–3257, shall be electronically copied from the docket in *Daker v. Wetherington* and transferred into *Yusha Abdul–Quddus v. Wetherington.* This shall include all docket entries following Mr. Abdul–Quddus's (formerly Mr. Joshua Kenney's) Motion to Intervene [185], including the currently pending (i) Mr. Yusha Abdul–Quddus' Motion for Summary Judgment [290]; (ii) Defendants' Motion for Extension of Time [292]; and (iii) Defendants' Motion for Summary Judgment [294]. Because Mr. Abdul–Quddus has already been permitted to proceed *in forma pauperis* in this action, that determination shall apply to the new action subject to his obligation to advise the Court of any changes to his financial condition. Finally, the Clerk is **DIRECTED** to **REMOVE** all pending motions by former Intervenor–Plaintiff Abdul–Quddus in *Daker v. Wetherington.* Because there are no remaining issues to be decided in *Daker v. Wetherington,* the Clerk is **FURTHER ORDERED** to close that case.

### B. Motion for Extension of Time

Defendants' Motion for Extension of Time [292] is hereby **GRANTED** *nunc pro tunc.*

---

**2.** This Court has previously determined that Mr. Abdul–Quddus was entitled to proceed *in forma pauperis* in his appeal of this Court's initial decision to deny his motion to intervene. *See Daker v. Wetherington,* No. 1:01–CV–3257–RWS, slip op. at 3 (N.D.Ga. Jul. 22, 2004). Unless his financial condition has changed since the Court reviewed his filings on that matter, the Court will continue to recognize his *in forma pauperis* status.

## II. Motions for Summary Judgment

### A. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The court should view the evidence and any inferences that may be drawn from it in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Here, the parties have cross-moved for summary judgment, and in their papers seek a Rule 56(c) resolution of all claims asserted by Plaintiff Abdul–Quddus. The Court therefore turns to address Plaintiff's three claims.

### B. Plaintiff Abdul–Quddus's Claims

Plaintiff Abdul–Quddus and Defendants have both moved for summary judgment on all claims. As an initial matter, the Court notes that Plaintiff Abdul–Quddus's claims closely track those asserted by Mr. Waseem Daker against the same set of defendants in *Daker v. Wetherington*, No. 1:01–CV–3257–RWS (N.D. Ga. filed Nov. 28, 2001). The Court has previously resolved Mr. Daker's identical claims challenging the GDC's (i) no-facial-hair policy, (ii) denial of Ta'lim services, and (iii) requirement of recital of a "Code of Ethics."

*See id.*, slip op. at 19–53 (Aug. 1, 2005). The Court thus relies on its prior ruling for guidance in this case.

In *Daker v. Wetherington*, this Court, after significant discussion of the issues, concluded that Defendants' shaving requirement did not violate RLUIPA or the United States Constitution. It reasoned that the GDC had a compelling interest in the identification of inmates, and that a shaving requirement was the least restrictive means of achieving that interest. *Id.* at 19–40. The Court also found in favor of Defendants on Mr. Daker's "Code of Ethics" claim, concluding that Mr. Daker's claims were moot because he was no longer subject to a requirement that he recite a "Code of Ethics" and was, in any event, due to be released from prison in three months. *Id.* at 51–52. The Court, however, awarded injunctive relief to Mr. Daker on his denial-of-Ta'lim claim, finding that Defendants' refusal to permit him a weekly religious educational opportunity violated RLUIPA. *Id.* at 40–47. Because the right to weekly Ta'lim was not clearly established, however, the Court found that Defendants were entitled to qualified immunity in their individual capacities. *Id.* at 47–51.

With its prior rulings in mind, the Court now takes up the parties' motions for summary judgment on Plaintiff Abdul–Quddus's claims.

### B. Shaving–Requirement Claim

As stated, Plaintiff Abdul–Quddus first challenges a Georgia Department of Corrections' policy that provides, "Goatees, beards, and similar facial adornments are prohibited, unless medically indicated." It is Plaintiff's position that this policy is unlawful, both under the RLUIPA and the Free Exercise Clause of the First Amendment.

In *Daker v. Wetherington*, this Court rejected a virtually identical claim asserted by Mr. Daker, concluding that the state has a compelling interest in identifying prisoners and that a no-beard policy is the least restrictive means to achieve that interest. *See Daker v. Wetherington*, No. 1:01–CV–3257–RWS, slip op. at 19–40 (N.D.Ga. Aug. 1, 2005). The Court, therefore, only considers new legal or factual assertions raised by Plaintiff Abdul–Quddus that may require additional analysis.

Plaintiff Abdul–Quddus, besides stating that he "adopts and proposes all of the less restrictive means mentioned by [Mr. Daker in *Daker v. Wetherington* ]" (*see* Pl. Abdul–Quddus' Br. in Supp. of Mot. for Summ. J. [290–2] at 9), makes several additional arguments in support of his contention that a shaving requirement is not the least restrictive means to accomplish the state's interest in immediate identification of prisoners. (*See id.* at 9–15.) First, he argues that certain prisoners who present the lowest security risk at GDC facilities and are thus designated as on "Trustee" status, could be excepted from the shaving requirement. Second, relying on *Gartrell v. Ashcroft*, 191 F.Supp.2d 23 (D.D.C.2002), he argues that Georgia could transfer its prisoners with religiously grounded facial-hair requests into the federal prison system, which allows prisoners to grow facial hair. Third, he argues that Georgia could transfer such prisoners to other states that make similar accommodations. Fourth, he argues that Georgia could except its privately managed prisons from the shaving requirement. And finally, he argues that Georgia could except its county-run facilities from the shaving requirement. After considering Plaintiff's proposed lesser-restrictive alternatives, the Court remains convinced that the GDC's shaving policy does not violate RLUIPA or the First Amendment.

■ As to his first contention, the Court concludes that the GDC's shaving requirement is not rendered constitutionally infirm by speculating that the GDC could, without undermining security, allow a very small percentage of its prisoners to grow facial hair. As this Court has previously concluded, a prisoner "cannot rely on the diminished risk that he and others like him pose to institutional safety to succeed on [a] RLUIPA claim." *Daker v. Wetherington*, No. 1:01–CV–3257–RWS, slip op. at 31 (N.D.Ga. Aug. 1, 2005). Although a prisoner on "Trustee" status may be less likely to escape or present security problems, the increased freedom and privileges afforded to such inmates may make it more necessary that these inmates be easily and immediately identifiable. The Court has previously concluded that allowing even the least dangerous prisoners to wear facial hair would nonetheless "compromise security in the prison and in the community." *Id.* at 30 (citing Adams Aff. ¶ 27; Ga. Admin. Code. § 125–3–1–.02(6)(d)). It finds no reason to depart from that conclusion now.[3]

The Court also finds Plaintiff's other proposed lesser-restrictive alternatives equally unavailing. Plaintiff's second and third proposed alternatives assert that the GDC might transfer certain prisoners with facial-hair requests to other prison systems outside of Georgia which accommodate prisoners who, for religious reasons, desire to grow facial hair. Plaintiff relies on *Gartrell v. Ashcroft*, 191 F.Supp.2d 23, in which a district court ordered the feder-

---

**3.** The records reflect that Plaintiff Abdul–Quddus has not, in any event, ever been placed on "Trustee" status. Rather, it appears that at the time of filing, Plaintiff was on "minimum security" status, but during the pendency of this litigation, Plaintiff's risk status increased to "medium security."

al prison system to accommodate the facial hair requests of certain federal prisoners who were incarcerated in a Virginia state prison under a contract with the federal Bureau of Prisons. But in the federal system, virtually all prisons do not impose a grooming policy restricting hair or beard length of federal prisoners. *Id.* at 27. The district court concluded that, because the alternative of transferring the plaintiffs in that case to virtually any other prison within the federal system was readily available and not burdensome, the failure to accommodate the plaintiffs in that action by transferring them to another federal prison did not survive strict scrutiny. *Id.*

This is a much different case. Here, the record reflects that none of Georgia's state prison institutions allows prisoners to grow facial hair. Thus, unlike in *Gartrell*, Defendants cannot accommodate Plaintiff's facial hair request through a readily available transfer to another GDC institution—rather, the GDC would have to change its policy at one or more institutions to accommodate Plaintiff. As this Court has previously concluded, neither RLUIPA nor the First Amendment requires it to do so. *Daker v. Wetherington*, No. 1:01–CV–3257–RWS, slip op. at 31 (N.D.Ga. Aug. 1, 2005).

■ Plaintiff's suggestion that Defendants could, without having to change its policy, transfer him outside of the GDC prison system is equally meritless. It cannot be doubted that the State of Georgia has a compelling interest in incarcerating its prisoners within its own prison walls. To require a state to surrender its prisoners to institutions over which it has no sovereignty or control would inhibit it from achieving virtually any penological goal. As the Court has previously concluded, neither RLUIPA nor First Amendment imposes a "lowest common denominator"

standard which requires state prison officials to adopt any religious accommodation that is recognized by other institutions. This Court explained:

> It may be that officials in other correction systems have decided, in their judgment, that a beard does not pose a serious enough security risk to warrant denying prisoners' the opportunity to grow facial hair. Even under the rigorous review required by the RLUIPA, however, the Court does not understand that every prison official must abdicate his or her own discretion and abandon any restriction not universally enforced by prisons across the country. *Cf. Hill v. Blackwell*, 774 F.2d 338, 344–45 (8th Cir.1985) ("Although the policy of other institutions is relevant in determining the need for a particular regulation, it is clearly not dispositive.... In this case it is enough to say that although the federal institutions and approximately one-half of the states [ ] do not enforce a beard regulation, approximately one-half of the states have determined that enforcing a beard regulation is important to the proper functioning of their penal institutions."). Instead, the Court perceives within the RLUIPA room for a particular prison to decline to join the "lowest common denominator" when, in the discretion of its officials, the removal of a challenged restriction poses an appreciable risk to security. *See Cutter*, 125 S.Ct. at 2123 (explaining that Congress "anticipated that courts would apply the [RLUIPA]'s standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.") (internal quotations omitted).

*Daker v. Wetherington,* No. 1:01–CV–3257–RWS, slip op. at 35–36 (N.D.Ga. Aug. 1, 2005). Because the GDC is not required by RLUIPA or the United States Constitution to adopt the religious accommodation proposed by Plaintiff—notwithstanding the fact that other prison systems have elected on their own accord to do so—it follows with equal or greater force that the GDC is not required to transfer its prisoners to those institutions which have voluntarily adopted such policies.

Plaintiff's fourth and fifth assertions that the GDC may simply change its rules in certain of its institutions also fail. Prison officials at county—or privately-run prison facilities have an equally compelling interest in the identification of prisoners as prison officials in state-run facilities. The ability to identify prisoners at those facilities would be diminished absent a shaving requirement. As such, the imposition of a shaving requirement at county—and privately-run facilities is as constitutionally justifiable as in its state-managed facilities. *See id.*

For these reasons, insofar as Defendants seek summary judgment on Plaintiff's challenge to the GDC shaving requirement, that motion is **GRANTED.** Insofar as Plaintiff seeks summary judgment on this claim, that motion is **DENIED.**

## B. "Code of Ethics" Claim

■ Both parties also move for summary judgment on Plaintiff's "Code of Ethics" claim, in which he challenges a requirement between 1999 and 2001 that he recite the Arrendale State Prison's Code of Ethics. It appears from the record that Plaintiff was required during inspection to state the words, "Discipline, Self–Pride, Uniformity." (*See* Pl. Abdul–Quddus's Second Aff. 2.) Plaintiff contends that RLUIPA and the First Amendment forbid Defendants from compelling his recitation of the "Code of Ethics." Because Plaintiff does not have standing to assert this issue, however, the Court concludes that it has no occasion to consider the lawfulness of the challenged policy.

First, it is clear from the record that Plaintiff himself is no longer required to recite the purportedly offensive Code. Moreover, among the four prisons in which Plaintiff has been incarcerated since 1999, only one prison warden required him to recite the Code of Ethics, which occurred between 1999–2001. Besides conclusively stating that "many GDC prisons still maintain the practice of compelling prisoners to recite the code of ethics against their will" (*see* Pl. Abdul–Quddus's Statement of Material Facts [290–3] 8), Plaintiff has offered no evidence detailing which or how many GDC prisons maintain a similar policy. Thus, the Court has no basis to conclude that Plaintiff is likely to be transferred to an institution that compels recitation of the Code. Stated differently, "there is no reasonable expectation . . . that the alleged violation will recur." *Dupree v. Palmer,* 284 F.3d 1234, 1237 (11th Cir.2002) (*quoting County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)); *see also Soliman v. United States ex. rel. INS,* 296 F.3d 1237, 1243 (11th Cir.2002) (stating that a "remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time" (quotations omitted)). Plaintiff's claims are therefore moot. Accordingly, Defendants' Motion for Summary Judgment, insofar as it seeks dismissal of Plaintiff's "Code of Ethics" claim, is **GRANTED.** Likewise, Plaintiff's Motion for Summary Judgment, insofar as it seeks monetary and injunctive relief against Defendants on this claim, is **DENIED.**

## C. Denial–of–Ta'lim Claim

■ Plaintiff likewise argues that Defendants have unlawfully denied him weekly Ta'lim, an Islamic educational class. He claims that being deprived of Ta'lim violates his rights under the RLUIPA, the Free Exercise Clause, and the Equal Protection Clause. This Court has previously concluded that the denial of Ta'lim to a Muslim prisoner violates RLUIPA, but that the law was not clearly established in 2005 such that a plaintiff could recover monetary damages against prison officials in their individual capacities for such a violation. *Daker v. Wetherington*, No. 1:01–CV–3257–RWS, slip op. at 40–51 (N.D.Ga. Aug. 1, 2005). A similar result is warranted here: Plaintiff is entitled to declaratory relief on his denial-of-Ta'lim claim, but Defendants are entitled to qualified immunity in their individual capacities.

Defendants argue that Plaintiff's denial-of-Ta'lim claim is moot, and note that he has been provided weekly Ta'lim since initiating this action. Plaintiff responds, however, that, because he was denied Ta'lim between 1999–2006 in three of four facilities in which he was incarcerated, and because Defendants voluntarily ceased their conduct as a result of this litigation and the litigation in *Daker v. Wetherington*, Plaintiff's claims remain ripe.

■■■ As a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *Dupree*, 284 F.3d at 1237. However, jurisdiction may abate if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979)).

Here, it is clear that Defendants voluntarily ceased their denial of Ta'lim well after he initiated this action in December 2003.[4] Although Defendants claim that the GDC policy previously denying Muslim prisoners Ta'lim has been "revised" (*see* Defs.' Br. in Supp. of Mot. for Summ. J. [294–2] at 16), Defendants have provided no assurance that Plaintiff will not be subjected to a similar policy should he be transferred to another prison facility in the future. Indeed, Defendants have not attempted to argue, much less demonstrate that the interim relief afforded to Mr. Daker in *Daker v. Wetherington* has been applied state-wide such that Plaintiff Abdul–Quddus will likely not be subject to that policy again. In view of the frequency of transfer of Plaintiff between GDC facilities in the previous seven years, it is likely that he will be transferred to another facility in the future, and there is little assurance that he will not be denied Ta'lim. Finally, Defendants have not demonstrated that Plaintiff's Ta'lim allowance has "completely and irrevocably eradicated the effects" of Defendants' previous denial. As such, Plaintiff has standing to assert this claim.

Having concluded that Plaintiff Abdul–Quddus has standing, the Court turns to examine whether Plaintiff is entitled to

4. Plaintiff Abdul–Quddus (previously Joshua Kenney) initially sought to intervene in *Daker v. Wetherington*, No. 1:01–CV–3257–RWS on December 3, 2003. (*See* Motion by Joshua Kenney for Intervention as of Right [185].) As explained above, this Court initially allowed him to intervene in that action, but as the result of this Order, has opened a new civil action in which Plaintiff Abdul–Quddus pursues his claims individually against Defendants. The Court construes Plaintiff Abdul–Quddus's action as commencing on December 3, 2003.

relief. Besides challenging Plaintiff Abdul–Quddus's standing in this action, Defendants have offered no argument on the merits of Plaintiff's claim that a denial of Ta'lim violates RLUIPA. For the same reasons provided in *Daker v. Wetherington*, the Court concludes that the challenged denial of Ta'lim is unlawful under RLUIPA.[5] *See Daker v. Wetherington*, No. 1:01–CV–3257–RWS, slip op. at 40–47 (N.D.Ga. Aug. 1, 2005). Plaintiff is entitled to declaratory relief as a matter of law.[6] Thus, insofar as Plaintiff seeks a declaration that Defendants' previous denial of Ta'lim violates RLUIPA, his Motion for Summary Judgment is **GRANTED.** Likewise, Defendant's Motion for Summary Judgment on this issue is **DENIED.**

▆ The Court also concludes, however, as it did in *Daker v. Wetherington*, that Defendants are entitled to qualified immunity. Here, the Court finds no precedent that would "clearly establish" a Muslim prisoner's right to Ta'lim.[7] Nor does it find this to be a case where "the conduct [involved is] so bad that case law is not needed to establish that the conduct cannot be lawful." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir.2002). Therefore, insofar as Defendants seeks summary

judgment in their individual capacities on Plaintiff's denial-of-Ta'lim claim, it is **GRANTED.** Likewise, insofar as Plaintiff's Motion for Summary Judgment seeks relief against Defendants in their individual capacities, it is **DENIED.**

## Conclusion

For the foregoing reasons, the Clerk is **DIRECTED** to **OPEN** a new civil rights action on behalf of Yusha Abdul–Quddus styled *Yusha Abdul–Quddus v. Wetherington, et al.* It is **FURTHER ORDERED** that all filings and currently pending Motions relating to the claims of Yusha Abdul–Quddus in *Daker v. Wetherington*, No. 1:01–CV–3257–RWS, shall be electronically copied from the docket in *Daker v. Wetherington* and transferred into *Abdul–Quddus v. Wetherington*. This shall include all docket entries following Mr. Abdul–Quddus's (formerly Mr. Joshua Kenney's) Motion to Intervene [185], including, but not limited to, the currently pending (i) Abdul–Quddus' Motion for Summary Judgment [290]; (ii) Defendants' Motion for Extension of Time [292]; and (iii) Defendants' Motion for Summary Judgment [294]. Because Mr. Abdul–Quddus has already been permitted to proceed *in forma pauperis* in

5. Because the Court finds the policy denying Muslims Ta'lim violative of RLUIPA, it need not, and does not, address the issue of whether such a denial would pass muster under the Equal Protection and Free Exercise Clauses of the Constitution. The Court's review of pertinent authorities, however, indicates that Plaintiff would encounter considerable difficulty in pursuing these constitutional challenges to the policy.

6. Because Plaintiff is not currently being denied Ta'lim, however, injunctive relief is not warranted at this juncture. Furthermore, any claim for damages against Defendants in their official capacities is barred by the Eleventh Amendment. *See Daker v. Wetherington*, No. 1:01–CV–3257–RWS, slip op. at 13–19 (N.D.Ga. Aug. 1, 2005).

7. Plaintiff Abdul–Quddus does not argue that this Court's previous Order in *Daker v. Wetherington* clearly establishes the right at issue here. In any event, for purposes of this case, a right is clearly established only by decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court. *See Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n. 4 (11th Cir.1997) ("In this circuit, the law can be clearly established for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." (internal quotations omitted)); *Courson v. McMillian*, 939 F.2d 1479, 1497–98 & n. 32 (11th Cir.1991).

this action, that determination shall apply to the new action subject to his obligation to advise the Court of any changes to his financial condition.

As a result of the opening of a new case for Plaintiff Abdul–Quddus, the Clerk is **DIRECTED** to **REMOVE** from *Daker v. Wetherington*, No. 1:01–CV–3257–RWS, all pending motions by former Intervenor–Plaintiff Abdul–Quddus, including the currently pending (i) Yusha Abdul–Quddus' Motion for Summary Judgment [290]; (ii) Defendants' Motion for Extension of Time [292]; and (iii) Defendants' Motion for Summary Judgment [294]. As there are no remaining issues to be decided in *Daker v. Wetherington*, the Clerk is **FURTHER ORDERED** to close that case.

In light of the foregoing, three motions are pending in *Abdul–Quddus v. Wetherington:* (i) Plaintiff Abdul–Quddus' Motion for Summary Judgment [290]; (ii) Defendants' Motion for Extension of Time [292]; and (iii) Defendants' Motion for Summary Judgment [294]. The Court hereby resolves those motions.

Plaintiff Abdul–Quddus' Motion for Summary Judgment [290] is hereby **GRANTED in part and DENIED in part.** It is granted insofar as Plaintiff Abdul–Quddus seeks a declaration that the prior denial of weekly Ta'lim by Defendants in their official capacities violated RLUIPA. It is denied insofar as Plaintiff seeks summary judgment on his shaving-requirement claim or his "Code of Ethics" claim, or seeks relief on his Ta'lim claim against Defendants in their individual capacities.

Defendants' Motion for Extension of Time [292] is hereby **GRANTED** *nunc pro tunc.*

Defendants' Motion for Summary Judgment [294] is hereby **GRANTED in part and DENIED in part.** It is granted insofar as Defendants seek dismissal of Plaintiff's shaving-requirement claim, Plaintiff's "Code of Ethics" claim, and Plaintiff's Ta'lim claim against Defendants in their individual capacities. It is denied insofar as Defendants in their official capacities seek dismissal of Plaintiff's Ta'lim claim.

As there are no issues remaining to be resolved in this case, the Clerk is **DIRECTED** to enter judgment in accordance with this Order and close the case.

**SO ORDERED.**