[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

------------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 31, 2008
THOMAS K. KAHN
CLERK

No. 06-16303
Non-Argument Calendar

-------------------------------------------

D.C. Docket  No. 05-00533-CR-T-24-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

IRENO LUIS DELGADO,
a.k.a. Ireno Luis,

Defendant-Appellant.

----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Florida
----------------------------------------------------------------

**(July 31, 2008)**

Before EDMONDSON, Chief Judge, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Ireno Luis Delgado appeals his convictions and 41-month sentence for conspiracy to commit mail fraud and mail fraud, 18 U.S.C. §§ 371, 1341. No reversible error has been shown; we affirm.

This case stems from an investigation conducted by the Federal Bureau of Investigation ("FBI") about the planning and staging of automobile accidents.[1] As part of the investigation, the FBI targeted Delgado because he operated clinics used to treat staged accident participants and submitted insurance claims on behalf of these participants for injuries allegedly sustained. At trial, in addition to the testimony of undercover agents, the government introduced many tape-recorded conversations between undercover agents, Delgado, and Emmanuel Mellon, the organizer of the staged accidents.

On appeal, Delgado argues that the district court erred in admitting (1) Delgado's admissions to undercover agents about his involvement in the charged offenses to establish elements of the offenses absent independent corroborating evidence, and (2) tape-recorded conversations between Mellon and undercover

---

[1]To facilitate the investigation, the FBI created a company called Trident Venture Group ("TVG") that advanced funds to staged accident participants in exchange for a promise that the participants would repay the amount advanced plus a handling charge when their insurance company paid them for a bodily injury ("BI") claim.

agents.  Delgado also argues that the district court erred in denying his motion for judgment of acquittal based on insufficiency of the evidence.

We review the district court's evidentiary rulings for an abuse of discretion. United States v. Perez-Oliveros, 479 F.3d 779, 783 (11th Cir.), cert. denied, 127 S.Ct. 2964 (2007).  And we review de novo the denial of a motion for judgment of acquittal based on sufficiency grounds, drawing all reasonable inferences in the government's favor.  United States v. Evans, 473 F.3d 1115, 1118 (11th Cir. 2006), cert. denied, 128 S.Ct. 44 (2007).

We conclude that the district court did not abuse its discretion in admitting the challenged evidence.  The tape recordings and trial testimony evidenced the following things:  (1) Mellon was introduced to Delgado in November 2000, and the two made arrangements to refer accident participants to Delgado's clinic for treatment; (2) Delgado and Mellon agreed that Delgado would pay Mellon for referrals; (3) Mellon and Delgado met before staged accidents so Delgado could review insurance policies of potential participants to ensure that coverage was adequate; (4) on many occasions, Delgado expressed frustration with the patients Mellon referred to him because their insurance coverage was too low or they stopped treatments at his clinic; (5) a participant in a staged accident -- also an indicted co-conspirator -- received treatment from Delgado at his clinic;

3

(6) Delgado submitted insurance claims for treatments of persons involved in staged accidents; and (7) Delgado was aware that TVG dealt only with staged accidents. The evidence also included copies of police reports from the accidents and insurance claims for the accident participants, which were mailed from Delgado's clinics.

About Delgado's admissions claim, while an accused may not be convicted based on his own uncorroborated confession, "[i]f the independent evidence is sufficient to establish the truth, trustworthiness and reliability of the accused's statement to the investigating authorities, and the statements themselves supply whatever elements of the offense are not proved by the independent evidence, the proof is sufficient to send the case to the jury." United States v. Micieli, 594 F.2d 102, 109 (5th Cir. 1979). We conclude that no abuse occurred here because independent evidence -- including conversations between Mellon and Delgado about referring patients, staging accidents, and insurance coverage, testimony by a participant who received treatment at Delgado's clincic, police reports, and insurance claims -- corroborated Delgado's admissions to investigating authorities about his involvement in the charged offenses.

About Delgado's challenge to the admission of Mellon's tape-recorded statements, a statement offered against a party by a co-conspirator of that party

4

during the course and in furtherance of the conspiracy is admissible as non-hearsay if the government proves by a preponderance of the evidence that (1) a conspiracy existed, (2) the conspiracy included the declarant and the defendant against whom the statement is offered, and (3) the statement was made during the course of and in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E); United States v. Underwood, 446 F.3d 1340, 1345-46 (11th Cir. 2006). The government established that a conspiracy existed between Mellon and Delgado as evidenced by testimony from undercover agents about their initial meeting and referral arrangements. And Mellon's statements were made in furtherance of the conspiracy.

We also conclude that from this admissible evidence, a reasonable jury could find that Delgado conspired with Mellon and others to effectuate staged accidents and submitted false claims on behalf of accident participants. To prove a conspiracy under section 371, the government must prove the existence of an agreement among two or more persons to achieve an unlawful objective, the defendant's knowing and voluntary participation in that agreement, and an overt act in furtherance of the agreement. United States v. Hanson, 333 F.3d 1264, 1270 (11th Cir. 2003). To prove mail fraud, the evidence must show that "the defendant (1) participated in a scheme or artifice to defraud and (2) used the United States

5

mails to carry out that scheme." United States v. Walker, 490 F.3d 1282, 1296 (11th Cir. 2007), cert. denied, 128 S.Ct. 1649 (2008). The aforementioned evidence about Delgado's dealings with Mellon in staging accidents, treating accident participants at his clinic, reviewing insurance policies of accident victims, and submitting claims on behalf of these participants sufficiently shows Delgado's knowing participation in the conspiracy and his use of the mails to carry out the fraudulent scheme.[2]

We turn to Delgado's sentencing claim. He argues that the district court erred when it used unreliable documentation in determining the intended loss attributable to Delgado. He also contends that the intended loss amount, which included BI claims, was not reasonably foreseeable because (1) Delgado intended only personal damage loss ("PIP"), and (2) included losses occasioned by his co-conspirators.

We review the district court's determination of the loss amount involved in an offense for clear error. United States v. Svete, 521 F.3d 1302, 1317 (11th Cir.

---

[2]Delgado also argues that the district court abused its discretion in denying his motion for a new trial based on the admission of Delgado's admissions and Mellon's statements. But because we conclude that the district court did not err in admitting these statements, we also conclude that no abuse occurred in denying the new trial motion.

2008).  Defendants sentenced under U.S.S.G. § 2F1.1[3] generally receive a sentence based upon the actual loss associated with the criminal conduct or the intended loss, whichever is greater.  United States v. Hedges, 175 F.3d 1312, 1316 (11th Cir. 1999) (citation and quotation omitted).  Such loss must be proven by the government by a preponderance of the evidence with "reliable and specific evidence," United States v. Dabbs, 134 F.3d 1071, 1081 (11th Cir. 1998) (citation and quotation omitted); but the amount need not need "be precise and may only be a reasonable estimate of the loss based on the available information," United States v. Woodward, 459 F.3d 1078, 1087 (11th Cir. 2006).

The district court did not clearly err in determining the loss amount.  The district court based its loss determination on amounts actually paid by the insurances companies -- not the intended losses -- and arrived at this figure based on the sentencing testimony of a government witness who had obtained documents from the insurance companies showing the total loss paid, including BI and PIP amounts, for each claim.  See United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004) (a district court  can base its sentencing determinations on, among other things, evidence presented at the sentencing hearing itself).  Nothing

---

[3]Delgado's sentence was calculated under the 2000 Sentencing Guidelines; section 2F1.1 later was deleted and consolidated with U.S.S.G. § 2B1.1.

indicates that this information was unreliable or nonspecific. It was not error for the court to include both BI and PIP claims in the loss amount because it was reasonably foreseeable that fraudulent insurance claims would not be limited to PIP claims.[4] Accordingly, we affirm Delgado's convictions and sentence.[5]

AFFIRMED.

---

[4]In fact, Delgado knew that participants paid advances back to TVG from money received from BI claims. In addition, it was not error for the district court to hold Delgado liable for the acts of his co-conspirators. See United States v. Baker, 432 F.3d 1189, 1235 (11th Cir. 2005) (co-conspirators are liable for reasonably foreseeable acts of their co-conspirators regardless of whether they had actual knowledge of those acts, as long as they played more than a minor role in the conspiracy or had actual knowledge of at least some of the circumstances and events in culminating in the reasonably foreseeable event).

[5]Delgado's argument that it was error for the district court to deny his pretrial motion to release substitute assets is moot because the district court already issued a final forfeiture money judgment. See Soliman v. U.S. ex. rel. INS, 296 F.3d 1237, 1242 (11th Cir. 2002) (if events occur after the filing of a disputed motion that deprive us of the ability to give appellant meaningful relief, the issue is moot and must be dismissed).