[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10160

_____

Agency No. A088-631-916

LINA MARGARITA CUADRADO BARRERA,
VICTOR JAVIER LOPEZ DAVILA,
HERNAN JAVIER LOPEZ CUADRADO,
STEFANY LOPEZ CUADRADO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 25, 2014)

Before MARCUS and DUBINA, Circuit Judges, and HODGES,[*] District Judge.

PER CURIAM:

_____

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

Lina Margarita Cuadrado Barrera, her husband, and their two children petition for review of the Board of Immigration Appeals ("BIA") decision dismissing their appeal from the Immigration Judge's denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA").[1] The BIA specifically found that Barrera could not show that she was targeted by the Revolutionary Armed Forces of Colombia ("FARC") on account of her alleged political activity. Moreover, the BIA concluded that Barrera was statutorily ineligible for asylum and withholding of removal because she provided material support to a designated terrorist organization through her provision of dental services to a FARC Commander. After thorough review, we hold that substantial evidence supports the BIA's determination that Barrera failed to establish the required nexus between her actual or imputed political opinion and the FARC's alleged persecution. Accordingly, we deny Barrera's petition on this basis without reaching the material support issue.

## I.

### A.

On January 27, 2007, Barrera, a native and citizen of Colombia, entered the United States with her husband, Victor Javier Lopez Davila, and their two children, Hernan Javier Lopez Cuadrado and Stefany Lopez Cuadrado. All four were

---

[1] For the sake of convenience, when we refer to Barrera in this opinion, we also include her husband and children.

2

admitted to the United States as non-immigrant B2 visitors with authorization to remain in the country for a temporary period, not to exceed July 23, 2007. On July 16, 2007, Barrera filed an application for political asylum, withholding of removal under the INA, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Barrera asserted that she would be persecuted by the FARC on account of her political opinion if she returned to Colombia, and she included her husband and children as derivative beneficiaries on the application.

In a statement attached to her application, Barrera explained that her father was a well-known and active member of the Colombian Liberal Party and held numerous public service positions. Her father had publicly denounced the FARC, and, as a result, the guerrilla organization threatened him on numerous occasions and even tried to kidnap him in 1996. Moreover, Barrera described her personal encounters with the FARC. As a dentist, Barrera started her own dental clinic with her husband, a dental technician, in her hometown of Chiquinquira, Colombia in September 1999. Because the clinic had to accept any patient who could afford its fees, Barrera began to receive "undesirable" patients, who had "bad manners" and used "vulgar language," which led to "unpleasant and dangerous situations." In an attempt to ameliorate this problem, Barrera increased the clinic's fees and refused bookings by pretending that all appointments were filled, but this brought about

"threats and violent reaction" from these patients. At a subsequent immigration hearing, Barrera clarified that she believed these individuals were FARC members.

In 2000, Barrera temporarily closed her clinic after the birth of her son. She reopened the clinic at the end of 2001. In early 2003, the "same old unpleasant men" began frequenting her clinic again. And, on January 15, 2004, the situation escalated. Two members of the FARC came to Barrera's clinic and instructed her that they would return the next day to take her to their chief, Commander Buitrago, in the town of Puente Nacional so that she could provide him with dental services. True to their word, the two men returned the next day and transported Barrera to their camp. The FARC Commander told her, "We ought to kill you for being the daughter of that bastard father of yours but I suppose you can be of service as a 'tooth puller.'" Barrera extracted two molars from Commander Buitrago and gave him an antibiotic. Then the men drove her back to her office.

On March 12, 2004, two members of the FARC shot and killed one of Barrera's patients, Vincent Castellanos, as he was exiting the clinic. Barrera shut down the clinic, and she and her husband purchased a used ambulance and began to offer mobile dental services. Barrera believed that this would be much less risky than running a dental practice at a fixed location, but things didn't work out as she expected. On May 25, 2006, approximately twelve FARC guerrillas stopped the ambulance and demanded that Barrera treat one of their men who had an injured

4

shoulder and arm. After explaining to the men that she was not a medical doctor but a dentist, Barrera administered first aid. The guerrillas then stole the ambulance, which Barrera was never able to recover. As a result, Barrera and her husband decided to leave Colombia and migrate to the United States.

At a hearing on June 6, 2011 before an Immigration Judge ("IJ"), Barrera testified on behalf of her application for asylum. For the first time since she filed her application, she asserted that she had belonged to the Liberal Party in Colombia for her entire life and worked as a Community Campaign Leader for three political candidates.

Barrera also reiterated the following statements from her asylum application: (1) her father received various threats from the FARC organization, who threatened "to attack his family, wife, [and] children"; (2) in 2004, the FARC forced her to go to their camp to provide dental services to a Commander, who told her, "we should have killed you actually for being the daughter of the Prosecutor Cuadrado but I think you will be better served as a . . . molar extractor"; (3) a patient of hers -- who turned out to be a member of the FARC -- was killed by the FARC outside her clinic; and (4) in 2006, she purchased and operated an ambulance, which was subsequently stolen by twelve FARC guerrillas after they made her treat one of their member's bullet wounds. Moreover, Barrera elaborated that the two FARC members who took her to the camp in 2004 threatened to kill

5

her family if she refused to accompany them. She did not call the police to report this incident because she "feared for [her] life." Barrera further testified that her mother received calls asking about Barrera's location after she left Colombia. Because of this, Barrera's mother eventually had to cut her telephone line.

In addition to Barrera's application, asylum interview, and hearing testimony, the administrative record before the IJ included the 2010 U.S. Department of State Human Rights Report for Colombia; various affidavits and letters from family, friends, and Colombian public officials; articles; a memorandum of law concerning the material support bar to immigration relief; and a Congressional Research Services report on foreign terrorist organizations.

### B.

After considering these materials, the IJ denied Barrera's applications for asylum, withholding of removal, and CAT relief in a written decision and order issued on November 9, 2011. First, the IJ found that Barrera furnished material support to a terrorist organization when she provided dental and medical assistance to members of the FARC. Therefore, Barrera was statutorily barred from obtaining asylum and withholding of removal under both the INA and the CAT. See INA § 212(a)(3)(B)(iv); 8 C.F.R. § 1208.16(d)(2). The IJ noted that only the Attorney General and the Secretaries of State and Homeland Security could grant a

6

discretionary duress exemption to the material support bar since Congress did not delegate such powers to the IJ or BIA.

Second, the IJ found that Barrera was not credible. Specifically, the IJ explained that the "omissions, inconsistencies, and vagueness" in the record reflected adversely on Barrera's credibility. Most significantly, Barrera failed to mention her political involvement as a member of the Liberal Party and Community Campaign Leader in her asylum application and asylum interview. She merely described her parents' and her husband's participation in politics at the interview, leaving out the critical fact that she was personally involved in political activism. The IJ also determined that in light of Barrera's lack of credibility, her claim was insufficiently corroborated by the supporting evidence.

Third, the IJ concluded that, even assuming Barrera's testimony was credible, the evidence was insufficient to support a finding of past persecution or a well-founded fear of future persecution. Specifically, the IJ determined that Barrera's encounters with the FARC did not rise to the level of past persecution since, although "she may have been intimidated on several occasions, she was never physically harmed." And, even if Barrera had established that she endured past persecution, she failed to demonstrate that the FARC persecuted her on account of one of the statutorily protected grounds under INA § 101(a)(42)(A). Barrera also did not establish a well-founded fear of future persecution in

7

Colombia since she provided "no evidence containing specific and direct facts" indicating that she had an objective fear of future persecution.

Because Barrera failed to establish her eligibility for asylum, the IJ denied her application for withholding of removal, which requires meeting the heavier burden of establishing a "clear probability" of persecution. Finally, the IJ denied Barrera's application for relief under the CAT since Barrera did not satisfy her burden of proving that she will "more likely than not" be tortured in Colombia with the acquiescence of the government. 8 C.F.R. § 1208.16(c)(2). Accordingly, the IJ ordered that Barrera be removed to Colombia.

Barrera appealed the IJ's decision to the BIA on the ground that she demonstrated eligibility for asylum and withholding of removal. She specifically claimed that the IJ erred by finding that (1) she was not persecuted on account of her political opinion, and (2) she was barred from obtaining relief because she provided material support to a terrorist organization. The BIA disagreed, dismissing Barrera's appeal on December 13, 2012. The BIA determined that Barrera's "provision of dental services to a FARC commander constitutes material support of terrorism, rendering her statutorily ineligible for asylum and withholding of removal under the [INA]." The BIA also dismissed the appeal on an alternative ground. It held that Barrera waived the issue of the IJ's adverse credibility finding by not challenging this on appeal, and the adverse credibility

8

determination "undermine[d] Barrera's claimed nexus between [her] alleged political activity and being targeted by the FARC." Lastly, the BIA noted that Barrera did not challenge the IJ's denial of CAT relief.

Barrera timely requested review of the BIA's decision by this Court.

## II.

"The appropriate standard of review is well-settled." Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). We must uphold the BIA's factual determination that an alien is ineligible for asylum or withholding of removal if it is supported by substantial evidence in the record. See Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001). The substantial evidence test is "deferential," requiring us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). Thus, a denial of asylum or withholding may be reversed only when the record evidence compels a conclusion to the contrary. Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). Insofar as an asylum decision is based on a particular interpretation of the INA, the BIA's legal interpretation is subject to de novo review. Mazariegos, 241 F.3d at 1324. Finally, we review only the BIA's decision, unless the BIA expressly adopts the IJ's opinion or reasoning. Najjar, 257 F.3d at 1284.

III.

A.

As an initial matter, the government argues that this Court should dismiss Barrera's petition as moot because she did not preserve her challenge to the IJ's adverse credibility finding before the BIA or this Court, and the adverse credibility finding is dispositive of this appeal. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). Put another way, "[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Ethredge v. Hail, 996 F.2d 1173, 1175 (11th Cir. 1993).

In contrast to cases in which we have dismissed a petitioner's appeal as moot, see, e.g., Soliman v. U.S. ex rel. INS, 296 F.3d 1237, 1242-43 (11th Cir. 2002) (per curiam), here an active case still exists since Barrera continues to seek asylum in the United States based on the purported persecution she faced -- and allegedly will continue to face if removed -- at the hands of the FARC in Colombia. No event has occurred subsequent to the filing of this appeal that deprives this Court of the ability to give Barrera meaningful relief. This petition cannot be dismissed as moot.

B.

10

Turning now to the merits, the overarching issue on appeal is whether the BIA erred by denying Barrera's requests for asylum and withholding of removal. Barrera first argues that the evidence compels a conclusion contrary to the BIA's finding that the alleged persecution she faced was not "on account of" one of the statutory enumerated grounds. She also asserts that the BIA improperly held that she provided material support to a terrorist organization and is therefore statutorily ineligible for asylum and withholding of removal. Because substantial evidence supports the BIA's conclusion that the IJ's adverse credibility determination "undermines [Barrera's] claimed nexus between [her] alleged political activity and being targeted by the FARC," we affirm the decision on that basis.[2] **[AR at 4.]** We need not, and do not, address the BIA's alternative finding that Barrera's provision of material support renders her statutorily ineligible for asylum and withholding of removal. See Mazariegos, 241 F.3d at 1324.

---

[2] Counsel for both parties acknowledged during oral argument that the undermining of Barrera's claimed nexus constitutes an independent ground on which the BIA rested its dismissal of the appeal. Moreover, this is consistent with the language in the decision, which reads this way:

> The lead respondent's provision of material support renders the respondents statutorily ineligible for asylum . . . . Additionally, because the respondents did not raise any allegation of error on appeal regarding the Immigration Judge's adverse credibility finding, they are deemed to have waived this issue. The adverse credibility finding undermines the respondents' claimed nexus between the lead respondent's alleged political activity and being targeted by the FARC. . . . For these reasons, the appeal will be dismissed.

**[AR at 4 (emphasis added).]** The BIA's use of the plural, "reasons," as well as its inclusion of the word "additionally" before discussing this separate argument, suggests that the adverse credibility determination, coupled with the resultant failure to satisfy the nexus requirement, furnishes an additional ground for dismissal of the appeal.

11

The asylum applicant carries the burden of proving statutory "refugee" status. 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 208.13(a). To satisfy this burden, an applicant basing her claim on the fact that she was persecuted on account of her political opinion must show, with specific and credible evidence, past persecution or a well-founded fear of future persecution, and that she has a political opinion, whether actual or imputed. 8 U.S.C. § 1101(a)(42)(A); see INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992); Najjar, 257 F.3d at 1287; 8 C.F.R. § 208.13(a), (b). An applicant must also establish that such persecution is "on account of" the political opinion. 8 U.S.C. § 1101(a)(42)(A). To reverse the BIA's finding that an alien has failed to demonstrate the requisite causal connection, we must be compelled to find that the alien will be persecuted "because of" her political opinion. See Elias-Zacarias, 502 U.S. at 483; Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 890-91 (11th Cir. 2007) (per curiam). In other words, the applicant must "present specific, detailed facts showing a good reason to fear that . . . she will be singled out for persecution" on account of a political opinion. Najjar, 257 F.3d at 1287 (quoting Faddoul v. INS, 37 F.3d 185, 188 (5th Cir. 1994)).

Here, the IJ's adverse credibility determination, coupled with Barrera's lack of sufficient corroborating evidence, doomed Barrera's asylum claim. In its decision, the BIA determined that Barrera waived the issue of the IJ's adverse credibility finding by not raising any allegation of error on appeal. If, like Barrera,

12

an alien fails to challenge an adverse credibility determination in her appeal to the BIA, we lack subject matter jurisdiction to review such an argument in her petition for review. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam). Even if Barrera had raised this issue on appeal before the BIA, she does not challenge the IJ's adverse credibility finding adopted by the BIA in her brief to this Court. Either way, she has abandoned the issue. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam) (noting that if an appellant fails to raise an issue in her initial brief, that issue is considered abandoned); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (asserting that a party waives an issue by failing to make any arguments with respect to that issue).[3]

"An IJ's denial of asylum relief . . . can be supported solely by an adverse credibility determination." Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1231 (11th Cir. 2006) (per curiam). But if an applicant produces evidence beyond her own testimony, "it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006) (per curiam) (quoting Forgue v. U.S. Att'y Gen., 401 F.3d 1282,

---

[3] Moreover, even if Barrera had not waived an attack on the adverse credibility determination, substantial evidence supports the IJ's conclusion that Barrera was not credible when she claimed that she had suffered persecution in Colombia on account of her political activities. The court offered specific, cogent reasons for its adverse credibility finding. See Kueviakoe v. U.S. Att'y Gen., 567 F.3d 1301, 1305 (11th Cir. 2009) (per curiam); Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). Barrera, on the other hand, failed to satisfy her burden of showing that the IJ's finding was not based on substantial evidence.

1287 (11th Cir. 2005)). Indeed, the IJ must consider <u>all</u> evidence presented by the applicant, whatever form it may take. <u>Forgue</u>, 401 F.3d at 1287.

Our examination of the record in this case reveals no credible or reliable evidence establishing Barrera's actual political opinion, much less any nexus between Barrera's political opinion and the FARC's alleged persecution. <u>See</u> <u>Sanchez v. U.S. Att'y Gen.</u>, 392 F.3d 434, 438 (11th Cir. 2004). Since the IJ determined that Barrera's testimony at her immigration hearing lacked credibility, Barrera cannot rely on this testimony to prove that she engaged in political activities or had the requisite nexus. Nor do the letters and affidavits submitted by Barrera demonstrate that she was targeted by the FARC on account of her political opinion. As the IJ noted, only one of Barrera's supporting documents even specifically references her political affiliation. In this letter, the municipal mayor of Tinjacá, Omar Malagon Espitia, merely states that Barrera was "a political activist who collaborated a lot for the campaign to the presidency of Dr. Alvaro Uribe Vélez, the current president of the Republic of Colombia." The IJ found that this letter was unreliable because it was inconsistent with Barrera's testimony. Barrera never testified that she worked on President Uribe's campaign; instead, she discussed three other campaigns she worked on, and asserted that her father worked on President Uribe's campaign. This letter alone cannot compel reversal of the BIA's determination that Barrera did not meet the nexus requirement.

14

In her brief and again at oral argument, Barrera urged that the IJ failed to consider that she was persecuted because of her imputed political opinion. "An imputed political opinion, whether correctly or incorrectly attributed, may constitute a ground for a well-founded fear of political persecution within the meaning of the INA." Najjar, 257 F.3d at 1289 (internal quotation marks and citations omitted). But to succeed on a theory of imputed political opinion, an alien must show that the "persecutor falsely attributed an opinion to [her], and then persecuted [her] because of that mistaken belief about [her] views." Id. (quoting Chanchavac v. INS, 707 F.3d 584, 591 (9th Cir. 2000)). Barrera fails to make this showing. The record instead reveals that in the two instances in which Barrera alleges that the FARC threatened her, the guerrilla members targeted her not for an imputed political opinion, but for her dental and medical expertise. In the first instance, the FARC members approached her for the purpose of extracting molars from their Commander. In the second, the FARC sought her out so that she could provide medical treatment to a wounded guerrilla. Based on this, it seems clear that Barrera was targeted by the FARC because the group sought dental and medical assistance -- not because the guerrillas "imputed" a political opinion to her. See Rodriguez Morales, 488 F.3d at 891. Because the evidence is insufficient to compel a finding that Barrera was threatened on account of her political opinion, it

cannot compel a conclusion that she has a well-founded fear of future persecution if returned to Colombia, and in particular, an objectively reasonable fear.

Finally, Barrera claims that she is eligible for withholding of removal under the INA. To succeed on a withholding of removal claim, an alien must show that "it is 'more likely than not' that she will be persecuted or tortured upon being returned to her country" on account of race, religion, nationality, membership in a particular social group, or political opinion. Sepulveda, 401 F.3d at 1232 (quoting Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002)). It is by now axiomatic that where, as here, an applicant fails to meet the lower burden of proof for asylum, she cannot meet the more stringent burden for withholding of removal. Amaya-Artunduaga, 463 F.3d at 1249, n.3. Thus, Barrera's withholding of removal claim fails too.[4]

PETITION DENIED.

---

[4] Barrera does not appeal the denial of CAT relief. Accordingly, we need not discuss this issue. See Amaya-Artunduaga, 463 F.3d at 1249, n.2.

16