[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15152
_____

D.C. Docket No. 4:16-cv-00291-CDL-MSH

PEDRO ARTURO SALMERON-SALMERON,

                                                    Petitioner - Appellant,

versus

WARDEN BILL SPIVEY,
FORMER SECRETARY DHS JEH JOHNSON,
ACTING ATTORNEY GENERAL SALLY QUILLIAN YATES,

                                                    Respondents - Appellees.
_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(June 13, 2019)

Before MARCUS and BLACK, Circuit Judges, and RESTANI,[*] Judge.

RESTANI, Judge:

_____

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

Pedro Arturo Salmeron-Salmeron, an El Salvadorian national, appeals the district court's dismissal of his petition for writ of habeas corpus and partial grant of summary judgment in favor of the Government regarding Salmeron-Salmeron's claim that United States Citizen and Immigration Services ("USCIS") should have exercised jurisdiction over his application for asylum.

After a review of the record and consideration of the arguments made both in the briefs and during oral argument, we affirm the district court's dismissal of his petition for writ of habeas corpus and partial grant of summary judgment.

## I.    BACKGROUND

The facts of this case are not in dispute. In May 2014, Salmeron-Salmeron entered the United States as a sixteen-year-old. On his initial I-213, Record of Deportable/Inadmissible Alien form ("I-213"), a border officer indicated that Salmeron-Salmeron feared returning to El Salvador. He was identified as an unaccompanied alien child ("UAC"), and eventually released to his parents in North Carolina.

Appellant's parents hired an immigration attorney, but the attorney did not file a claim for asylum, for withholding of removal, or under the Convention Against Torture.[1] Instead, the attorney applied for voluntary departure only, which

---

[1] Appellant filed an ineffective assistance of counsel claim asserting that his previous attorney should have sought these or other avenues of immigration relief and attempted to reopen the case in order to apply for asylum. After a series of appeals, the Fourth Circuit eventually

an Immigration Judge granted. Salmeron-Salmeron did not depart by July 21, 2015, as required by the terms of the voluntary departure, so the order became a final order of removal. On August 27, 2015, Salmeron-Salmeron turned eighteen years old. In January 2016, Immigration and Customs Enforcement ("ICE") detained Salmeron-Salmeron, completed a new I-213 stating that Salmeron-Salmeron was eighteen, and transferred him to the Stewart County Detention Center—an adult detention facility in Lumpkin, Georgia.

During his detention, Salmeron-Salmeron filed an asylum application with USCIS and a petition for writ of habeas corpus under 28 U.S.C. § 2241.[2] On July 28, 2016, USCIS determined that it did not have jurisdiction over Appellant's asylum claim because his UAC determination had been terminated prior to his filing for asylum. Salmeron-Salmeron was deported to El Salvador on November 12, 2016.

In a Report and Recommendation to the district court, the magistrate judge recommended the dismissal of Salmeron-Salmeron's habeas corpus claim as moot given his deportation from the United States. Report and Recommendation, *Salmeron-Salmeron v. Lynch*, No. 4:16-cv-291-CDL-MSH (M.D. Ga. Aug. 24, 2017) ("Report and Recommendation"). The magistrate judge also recommended

---

affirmed the BIA's denial of the motion. *Salmeron-Salmeron v. Sessions*, No. 16-2209, 2017 WL 3327813, 694 Fed. App'x 196 (4th Cir. Aug. 4, 2017).

[2] Salmeron-Salmeron raised his Administrative Procedure Act ("APA") claim in his habeas petition, pursuant to 5 U.S.C. § 703.

that the district court grant the Government's motion for partial summary judgment on Salmeron-Salmeron's APA claims under 5 U.S.C. § 706 because USCIS had a rational basis for its decision. *Id.* at 10. After a *de novo* review of the record and consideration of Salmeron-Salmeron's objections, the district court adopted the Report and Recommendation in full and entered judgment on September 25, 2017. Order on Report and Recommendation, *Salmeron-Salmeron v. Spivey*, No. 4:16-cv-291-CDL (M.D. Ga. Sept. 22, 2017) ("Order on Report and Recommendation"); *Salmeron-Salmeron v. Spivey*, No. 4:16-cv-291-CDL-MSH (M.D. Ga. Sept. 25, 2017).

On appeal, Salmeron-Salmeron asserts two claims. First, he argues that the inclusion of numerous documents unrelated to the jurisdictional decision of USCIS and initial exclusion of other documents relied on by USCIS precluded effective judicial review. Second, he argues that the jurisdictional decision of USCIS was arbitrary and capricious because it violated agency procedures regarding UAC designations. Specifically, Salmeron-Salmeron argues that agency procedure required USCIS to adopt his previous UAC designation and exercise jurisdiction over his asylum claim because no affirmative act terminating that designation occurred. In a footnote, Salmeron-Salmeron also contends that if the Court reverses the district court's summary judgment decision on the APA claims, it should also reverse the decision to dismiss his habeas claim as moot.

4

## II.    JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the final decision of the district court.[3] It reviews a district court's grant of summary judgment *de novo*. *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1263 (11th Cir. 2008). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court considers all evidence and inferences reasonably drawn therefrom "in the light most favorable to the nonmoving party." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1141 (11th Cir. 2014).

Because Salmeron-Salmeron appeals the decision of USCIS under the APA, the Court reviews whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41 (1983). This is a deferential standard; a court does not substitute its own judgment for that of the agency, but assesses whether the agency arrived at a rational conclusion connected to the evidence. *State Farm*, 463 U.S. at 43. Further, the Court employs a harmless-error analysis when "a mistake of the administrative body is one that clearly had no bearing on the procedure used or the

---

[3] All references to the district court's analysis refer to the magistrate judge's Report and Recommendation, which was adopted in full by the district court. *See* Order on Report and Recommendation; Report and Recommendation.

5

substance of decision reached." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1224 n.13 (11th Cir. 2015) (citations omitted); *see also* 5 U.S.C. § 706 (instructing a reviewing court to take account of "the rule of prejudicial error").

## III.    DISCUSSION

### a.  The adequacy of the Certified Administrative Record

It is a foundational principal of administrative law that a reviewing court must review only the information that was before the agency at the time of its decision in assessing whether that decision was permissible. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) (noting that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). Here, there is clear evidence that the Government provided the district court with an administrative record that contained numerous documents unrelated to and post-dating the jurisdictional decision of USCIS. The Government additionally supplemented the record with relevant documents after its initial submission. It is thus undeniable that the Government erred in its provision of documents to the district court. But a mistake is harmless when it "is one that clearly had no bearing on the procedure used or the substance of decision reached." *Animal Legal Def. Fund*, 789 F.3d at 1224 n.13. It is clear that the errors as to the administrative record are just that—harmless.

6

As a logical matter, because the submission of the administrative record to the district court did not arise until after USCIS made its jurisdictional decision, there is no way any problem with this submission affected the decision itself. Salmeron-Salmeron does not specify in his brief exactly what harm was caused by the inclusion of numerous documents unrelated to the jurisdictional decision of USCIS, but stated at oral argument that the harm was a lack of knowledge regarding what the agency relied on in rendering its decision. The record submitted to the district court, however, indicates that USCIS based its decision that Salmeron-Salmeron's UAC designation had been terminated both on his detention in an adult facility and an issuance of a new I-213 by ICE indicating that he was eighteen years old. Although the July 28, 2016, decision by USCIS finding a lack of jurisdiction does not explain its reasoning, emails between a USCIS officer and USCIS headquarters about Salmeron-Salmeron's application, and whether USCIS possessed jurisdiction, clarify the rationale for the decision.

Appellant does not allege that the improperly included documents or supplementation of the administrative record affected the district court's review. Nonetheless, a review of the court's decision reveals that it did not rely on any improperly included documents in its decision. The court sees no other potential harm or prejudice in this case caused by the inclusion of numerous documents not before the agency at the time of its decision. *See* Report and Recommendation at 9

7

(noting that the jurisdictional decision of USCIS was not irrational given the newly filed I-213 indicating Salmeron-Salmeron's age as eighteen). To be sure, including numerous documents unrelated to the question being reviewed has the potential to frustrate judicial review. In such a situation, a court is well-equipped to order submission of a less voluminous and accurate record. Apparently, it saw no need to do so here.

Similarly, the Court finds no harm caused by the Government's supplementation of the administrative record. Although these later-submitted documents do contain information that explain the rationale of USCIS for not exercising jurisdiction, the documents were provided to the district court and Appellant's counsel before the district court completed its review.

Accordingly, the Court holds that the improper inclusion of irrelevant documents in the administrative record and its subsequent supplementation with relevant documents did not prejudice Salmeron-Salmeron and any errors on the part of the Government in this respect are harmless.

### b. The decision not to exercise jurisdiction over Salmeron-Salmeron's asylum claim by USCIS

Salmeron-Salmeron does not allege that he was under eighteen when he filed a petition for asylum. His age is not in dispute. Rather, he alleges that the decision of USCIS denying jurisdiction based on his UAC status having been terminated prior to his application is arbitrary and capricious. Specifically, Salmeron-

Salmeron argues that USCIS failed to follow its own internal policy guidance regarding UAC status determinations and challenges its finding that an affirmative act had terminated his UAC status.

As indicated, the Court will uphold an agency's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard requires the Court to assess whether the agency demonstrated a "rational connection between the facts found and the choice made," *State Farm*, 463 U.S. at 43 (citations omitted), and whether an agency considered all the relevant factors, *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 833 F.3d 1274, 1285 (11th Cir. 2016). In order to assess this claim, the Court must first turn to the statute at issue.

The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 106–386, 114 Stat. 1464 (2000), was passed in part to afford UACs additional protections. *See* 154 Cong. Rec. 24,565 (2008) (statement of Sen. Feinstein, cosponsor of original Senate version). The relevant provisions allow UACs facing removal to have an asylum claim heard by a USCIS officer, rather than by an immigration judge, as is the norm for those in removal proceedings. 8 U.S.C. § 1158(b)(3)(C).[4] A UAC is one who:

---

[4] 8 C.F.R. § 208.2(b) (2011) provides that immigration judges shall have jurisdiction over asylum applications once a document commencing removal proceedings has issued.

9

(A)  has no lawful immigration status in the United States
(B)  has not attained 18 years of age; and
(C)  with respect to whom—
    (i)  there is no parent or legal guardian in the United States; or
    (ii)  no parent or legal guardian in the United States is available to provide care and physical custody.

6 U.S.C. § 279(g)(2). The TVPRA leaves it to the "Secretary of Health and Human Services, in consultation with the Secretary of Homeland Security" to develop procedures to be used by these agencies to identify UACs. *See* 8 U.S.C. § 1232(b)(4).

To avoid redundant factfinding, and the resulting waste of agency resources, USCIS has developed procedures for identifying UACs in making jurisdictional determinations. According to a 2013 policy memorandum, USCIS officers are to adopt a prior UAC finding without additional inquiry unless there has been an affirmative act by a relevant agency to terminate that finding.[5] *See* Memorandum from Ted Kim, USCIS Acting Chief, Asylum Division (May 28, 2013), *Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children*, HQRAOI 120/12a ("2013 UAC Memo"). What constitutes an "affirmative act" is not defined in the 2013 UAC Memo, but

---

[5] The 2013 UAC Memo states that "in those cases in which either [Customs and Border Protection ("CBP")] or ICE has already made a determination that the applicant is a UAC, and that status determination was still in place on the date the asylum application was filed, Asylum Offices will adopt that determination without another factual inquiry. Unless there was an affirmative act by HHS, ICE or CBP to terminate the UAC finding before the applicant filed the initial application for asylum, Asylum Offices will adopt the previous DHS determination that the applicant was a UAC." 2013 UAC Memo.

an Asylum Procedure Manual from 2016 helps elucidate what USCIS considers to be such an act. *See* USCIS, Asylum Division, Affirmative Asylum Procedures Manual ("AAPM") (2016). In the AAPM, evidence of prior UAC determinations includes a "Form I-213, Record of Deportable Alien." *Id.* at II(B)(1)(a)(iii)(1). The AAPM also notes that transferring an individual to an adult detention facility is an affirmative act that terminates UAC status. *Id.* at II(B)(1)(a)(iii)(1) & n.9.

USCIS found that an affirmative act had occurred because ICE issued a new I-213 indicating that Salmeron-Salmeron was eighteen years old and he was placed in an adult detention facility. This determination is in accord with USCIS policy and practice as laid out in the 2013 UAC Memo and AAPM. Appellant's arguments that this decision is arbitrary or capricious insofar as the action was out of line with agency guidance are, accordingly, unpersuasive. The sole issue remaining is whether the jurisdictional determination by USCIS was a rational decision based on the evidence.[6]

Salmeron-Salmeron argues the actions identified by USCIS do not constitute

[6] The court notes that the notion that USCIS may exercise jurisdiction over an asylum application filed by a person facing removal who has previously been determined to be a UAC—even in the face of evidence that the applicant may have turned eighteen—is not derived from any statute or regulation, but from the 2013 UAC memo. The 2013 Memo effectively allows USCIS to engage in a legal fiction, exercising jurisdiction over an asylum application filed by a person in removal proceedings who received a favorable UAC determination in the past, even where it knows that person no longer qualifies as a UAC. It does so despite the regulations and the limited exception provided by the clear jurisdictional language of the statute as modified by the TVPRA, which specifically grants USCIS "initial jurisdiction over any asylum application filed by [a UAC]." 8 U.S.C. § 1158(b)(3)(C). Because no party challenges this framework as impermissible under the statute or regulations, the Court does not address that issue here.

11

"affirmative acts" sufficient to terminate his UAC status because: (1) an I-213 is not an "action document" to which Salmeron-Salmeron would have been able to object; and (2) placement in an adult detention facility is not necessarily inconsistent with UAC status.[7]

While these points might give pause in another matter, here they do not because it is undisputed that Salmeron-Salmeron was over the age of eighteen when he was apprehended, determined to be eighteen, and then placed in adult detention.

The issuance of a new I-213 indicating that Salmeron-Salmeron was eighteen years of age followed by detention in an adult facility, is sufficient for USCIS to find an affirmative act terminating UAC status prior to Salmeron-Salmeron's asylum application. The issuance of the new I-213 identifying Salmeron-Salmeron as an adult indicates that the transfer to the adult facility was not made under exceptional circumstances or without consideration of potential UAC status. The jurisdictional decision of USCIS was accordingly rational and based on the information before it. *See State Farm*, 463 U.S. at 43. Therefore, the

---

[7] To this latter point, although the TVPRA requires UACs to be transferred to Health and Human Service's Office of Refugee Resettlement, it allows some flexibility in completing that transfer. 8 U.S.C. § 1232(b)(3) ("Except in the case of exceptional circumstances, any department or agency of the Federal Government that has an unaccompanied alien child in custody shall transfer the custody of such child to the Secretary of Health and Human Services not later than 72 hours after determining that such child is an unaccompanied alien child."); *see also* 6 U.S.C. § 279(g)(1) (noting that a UAC can be placed in "either a detention facility or an alternative to such a facility").

12

decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

### c. Salmeron-Salmeron's Habeas Petition

As a general rule, a habeas petition presents a live case or controversy only when a petitioner is in custody. *See* 28 U.S.C. § 2241(c); *Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998); *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335–36 (11th Cir. 2001) (noting that "[a] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome") (citations omitted). This general rule does not govern when a detention has a tangible "collateral consequence." *See Mattern v. Sec'y for Dep't of Corr.*, 494 F.3d 1282, 1285 (11th Cir. 2007).

In the immigration context, this Court has held previously that a habeas petition filed by a subsequently deported alien who challenges not only his detention, but also his final order of removal, may survive a mootness challenge. *See Moore v. Ashcroft*, 251 F.3d 919, 922 (11th Cir. 2001) (holding that the time bar on readmission to the United States after applicant's removal satisfied the injury requirement); *see also Soliman v. United States ex rel. INS*, 296 F.3d 1237, 1243 n.2 (11th Cir. 2002) (distinguishing *Moore*, and finding the case moot, on the grounds that Soliman, unlike Moore, did not challenge his final order of removal). Salmeron-Salmeron only challenged his detention, and not his final order of

13

removal. Thus, his habeas claim is moot. Further, as Salmeron-Salmeron's APA claim has failed, Appellant does not otherwise argue that any meaningful relief could be granted to him via a habeas petition.

## IV.    CONCLUSION

For the reasons set forth above, the Court affirms the decision of the district court to dismiss Salmeron-Salmeron's habeas claim as moot and to grant partial summary judgment in favor of the Government.

**AFFIRMED.**