[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14580
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-00459-ELR

TIMOTHY M. BAJJANI,

Plaintiff-Appellant,

versus

U.S. SMALL BUSINESS ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 13, 2020)

Before ROSENBAUM, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Timothy Bajjani sought review of two administrative decisions of the Small Business Administration garnishing his wages.  The district court granted summary judgment for the Administration, concluding that the administrative decisions were not arbitrary and capricious.  Bajjani now appeals the grant of summary judgment for the Administration.  We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *The Loan*

This case concerns the Administration's 504 loan program.

> The [Administration]'s 504 loan program . . . provides financial assistance through 10 or 20 year loans to small businesses.  Under the program, a certified development company or CDC issues a debenture to fund the borrower's acquisition of the real property, machinery and equipment needed for a business venture.  The debenture, which is guaranteed 100 percent by the [Administration], is sent to a central servicing agent which disburses or sells the debenture to a pool of private investors.  The proceeds of the debenture are used to fund the 504 loan.

United States v. Sobecki, No. 3:96–CV–668RP, 1998 WL 175870, at *2 (N.D. Ind. Mar. 26, 1998); see also Mitec Partners, LLC v. U.S. Bank Nat'l Ass'n, 605 F.3d 617, 620 n.2 (8th Cir. 2010).[1]

---

[1] See also Office of Financial Assistance | Resources, U.S. Small Business Administration, https://www.sba.gov/offices/headquarters/ofa/resources/4049 (last visited August 11, 2020) ("The 504 Loan Program provides approved small businesses with long-term, fixed-rate financing used to acquire fixed assets for expansion or modernization.  [These] loans are made available through Certified Development Companies (CDCs), SBA's community based partners for providing 504 Loans.").

On May 1, 2006, the Administration guaranteed a loan between Georgia Mountains Economic Development Corp. (a certified development company) and RLB Friendship, LLC (the borrower) for RLB Friendship to acquire a piece of property and lease it to Georgia Hydraulic Cylinder, Inc.  On May 18, 2006, RLB Friendship signed a twenty-year SBA-guaranteed $798,000 note in favor of Georgia Mountains, secured by the property.  The note was junior to a first mortgage on the property in the amount of $967,500.  Joe Bajjani, father of Timothy Bajjani and RLB Friendship's managing member and sole owner, signed the note and personally guaranteed the loan.  Additional collateral for the note included guarantees from RLB Holdings, Inc., Bajjani Services, Inc., and Georgia Hydraulic—all companies wholly owned by Joe Bajjani.  Accompanying the note was the May 1 debenture guarantee.  The standard document provided that, "[p]rior to 504 Loan Closing, [the certified development company] must require Borrower . . . to certify that [it] will not, without prior consent of [the certified development company] and [the Administration] . . . [c]hange the ownership structure of interests in the business during the term of the Note . . . ."  The note had similar language: "Borrower is in default if Borrower . . . changes ownership or business structure without [the certified development company]'s prior written consent . . . ."

On September 5, 2007, Joe Bajjani, planning his estate, sought permission from Georgia Mountains and the Administration to transfer a forty-nine percent

3

interest in Georgia Hydraulic to his adult son, Bajjani.[2]  Georgia Mountains recommended that the Administration approve the transfer.  However, before the Administration would approve the transfer, Bajjani had to sign an unconditional guarantee adding him to the loan as a personal guarantor.  Georgia Mountains, using the Administration's "Unconditional Guarantee" form, prepared Bajjani's guarantee.  Bajjani signed the guarantee in October 2007, and Georgia Mountains signed and assigned the guarantee to the Administration on November 19, 2007.  Fast-forward five years later.  Georgia Hydraulic filed a Chapter 11 bankruptcy petition.

*First Administrative Hearing*

In 2014, RLB Friendship defaulted on the note.  As a result, the Department of the Treasury notified Bajjani of the Administration's intent to garnish his wages––specifically, to garnish fifteen percent of his monthly net income.[3]  Bajjani administratively appealed, claiming: (1) he did not owe the debt; and (2) that the proposed garnishment would cause financial hardship.

On November 20, 2015, the Administration sent Bajjani a letter, setting the appeal for a hearing and assigning a hearing officer to preside over the proceeding.

---

[2] We will refer to the plaintiff as Bajjani and the plaintiff's father as either Joe Bajjani or the father.

[3] At the time of the administrative wage garnishment, the property was not used to offset the remaining balance on the note because RLB Friendship "surrendered [the property] to the first secured creditor."

In the letter, the first hearing officer informed Bajjani that he "appeared to be appealing the garnishment due to one or more of the following usual reasons: (1) Existence of the Debt; (2) Amount of the Debt; (3) Terms of the Garnishment; and (4) Financial Hardship." He also told Bajjani that he will only consider "written materials and other records" submitted by him and the Administration. If Bajjani was appealing due to the first three reasons, the first hearing officer said, then he had to "submit additional evidence." But if his appeal was limited to arguing financial hardship, the first hearing officer continued, then Bajjani had to submit a "Financial Disclosure Statement" where his income and expenses would be "compared against averages for those expenses by families of the same size and income as [his] family."

In response, Bajjani's counsel sent a written communication to the first hearing officer, arguing that Bajjani was not a borrower on the loan agreement because he was not listed as a guarantor. The first hearing officer replied,

> [Y]ou question Mr. Bajjani's liability on the debt given the fact he was not listed as a guarantor on the loan agreement you attached to your letter.
>
> . . . .
>
> As to Mr. Bajjani's personal liability, he executed an Unconditional Guarantee pursuant to a change to the Loan Authorization requested by [Georgia Mountains]. As stated in the enclosed "327 Modification or Administrative Action/CDC General Request," this change was made due to the fact [the father] transferred 49% of the corporation's non-voting stock to his son[, Timothy Bajjani]. As an owner, Timothy Bajjani, under [administrative] regulations, was required to guarantee the loan. Accordingly, Timothy Bajjani executed a Statement of

5

Personal History and executed an Unconditional Guarantee. Copies of all these documents are included with this mailing.

I don't believe there is any question regarding Timothy Bajjani's personal liability on the loan. With that having been said, if [Timothy Bajjani] wants to pursue his Administrative Wage Garnishment appeal it will be necessary for him to . . . provide copies of the [sic] all the documents mentioned in my November 20, 2015 letter.

Bajjani and the Administration submitted additional evidence. Bajjani provided the loan agreement, a "Financial Disclosure Statement," and recent income and tax information. The Administration submitted the loan modification, the "Unconditional Guarantee" Bajjani signed, a "Statement of Personal History" that detailed the transaction history and communications relevant to the loan, and other records that established the "amount and past-due status of the debt."

On August 31, 2016, the first hearing officer, determining that "no oral hearing [was] needed," 13 C.F.R. § 140.11(f)(3)(iii), conducted a "paper hearing . . . based upon a review of the written record." His determination was based on "the available pertinent material records related to [Bajjani's] account, including those submitted by [Bajjani] and those held by the [Administration]."

Bajjani objected to the amount of the administrative wage garnishment because he did not owe the debt and the amount of the proposed garnishment would cause him financial hardship. Rejecting both these arguments, the first hearing officer concluded that an administrative wage garnishment was appropriate, although for a different amount. As to whether Bajjani was responsible for the debt,

6

the first hearing officer found Bajjani failed to provide any information or documentation in support of this objection. Regarding Bajjani's objection that a withholding of fifteen percent of his monthly net income would cause him a financial hardship, the first hearing officer found that Bajjani had "partially proven" a financial hardship. The first hearing officer calculated Bajjani's "net family monthly disposable income" as $4,458.22. Fifteen percent of that figure was $668.73. The first hearing officer next subtracted Bajjani's "accepted" monthly expenses of $4,239 from his net monthly disposable income of $4,458.22, leaving $219.22. "Since [the $219.22] amount [was] below the figure that equates to 15 percent of [Bajjani's] family monthly disposable income ($668.73)," the first hearing officer determined, a garnishment of Bajjani's wages is "excessive, if the amount exceeds $219.22 per month." "Based on these findings," the first hearing officer ordered that Bajjani's employer "withhold from [Bajjani's] wages the amount of $219.22 per month until the debt is paid in full." The first hearing officer stated that, under the Administrative Procedure Act, "this [decision was] the final agency decision for purposes of judicial review" and Bajjani could "seek judicial review in Federal district court."

## Second Administrative Hearing

A month after the first hearing officer's decision, Bajjani's wages were not garnished. Instead, the Department of the Treasury re-notified Bajjani of the

7

Administration's intent to garnish his wages, and Bajjani again requested a hearing to oppose the garnishment.[4] This time, Bajjani argued only that he did not owe the debt.

The second hearing officer did not originally know of the first decision. In preparation for the hearing, Bajjani submitted an affidavit from his father as evidence that he did not owe the debt. Bajjani's father attested that, in September 2007, he "notified the first hearing officer . . . of [his] intention" to transfer forty-nine percent of his stock to his son. The first hearing officer, according to the father, "instructed" him that Bajjani would need to be added to the loan as a guarantor to execute the transfer. The second hearing officer recognized the name of the first hearing officer and contacted him to inquire about the father's representations. In response, the first hearing officer stated that he had never spoken with the father and had previously issued an opinion as to the garnishment of Bajjani's wages. In light of the first hearing officer's decision, the second hearing officer, "[w]ithout ruling on the merits of [Bajjani's] argument," rejected Bajjani's appeal on res judicata grounds and determined that the proposed garnishment was appropriate. The second hearing officer ended his decision explaining that this was

---

[4] The district court explained that the administrative record was silent as to why the Department of the Treasury sent Bajjani a second garnishment notice. The district court found that "the second [notice] was sent in error."

the "final agency decision for purposes of judicial review under the Administrative Procedures Act," and Bajjani could seek review in "Federal District Court."

*District Court Proceedings*

Bajjani filed suit against the Administration in the Northern District of Georgia, challenging both administrative decisions. The parties agreed that no discovery was needed and moved for summary judgment. In his motion, Bajjani argued that the first hearing officer's decision that the guarantee was valid and the second hearing officer's decision that res judicata barred relitigating the validity of the guarantee were arbitrary and capricious. The district court, finding that the administrative decisions were not arbitrary and capricious, granted summary judgment for the Administration.

As to the first hearing officer's decision concerning the validity of the guarantee, Bajjani asserted that this decision was arbitrary and capricious because: (1) the validity of the guarantee was beyond the scope of the hearing as Bajjani's appeal was brought under the Administration's informal procedure for a financial-hardship review; and (2) the guarantee was void given that "he . . . received no consideration for signing the guarant[ee] because the transfer of ownership from his father to him never took place." The district court rejected both arguments.

First, the court found that Bajjani appealed the Administration's decision for "reasons in addition to financial hardship," including that he did not owe the

9

debt.  Therefore, the district court concluded, the validity of Bajjani's guarantee was "prominently before [the first hearing officer]."  The court added that Bajjani had "several opportunities to challenge the validity of the guarant[ee]," but chose not to do so, and cannot "seek refuge in his own failures and conveniently contend that the issue was never before [the first hearing officer]."  As to Bajjani's second argument––that he received no consideration for the guarantee given that his father did not execute the transfer—the district court concluded that the first hearing officer had "reason to believe [Bajjani] ha[d] received consideration."  The first hearing officer had the unconditional guarantee form Bajjani signed that said "Joe Bajjani transferred 49% of the corporation's non-voting stock to his son[, Timothy Bajjani]." Because Bajjani's only evidence to rebut this finding was "based upon information not before [the first hearing officer] at the time he made his decision"—the bankruptcy record—the district court could not consider it.

As to the second hearing officer's res judicata determination, Bajjani argued that this decision was arbitrary and capricious because: (1) the first hearing was not sufficiently "trial-like" to apply res judicata; (2) res judicata could not apply after the second hearing officer reopened the case and accepted and evaluated newly presented evidence; and (3) res judicata should not be applied to enforce a void contract.  The district court concluded that the first hearing was sufficiently trial-like.  "In his first hearing," the district court reasoned, "it [was] undisputed that

10

[Bajjani] had due notice, was given ample opportunity to be heard, was represented by counsel, and afforded several occasions to present evidence."  As to whether the second hearing officer reopened the hearing, the district court said that the hearing officer did not consider the merits of Bajjani's claims, but only determined the res judicata effect of the first hearing.  Finally, as to his third argument, the district court concluded that there was no public policy exception to res judicata where a guarantee was made without consideration.  The validity of the guarantee went to the merits of Bajjani's claims, which was decided at the first hearing.

## STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment "while applying the appropriate standard of review to the agency's decision."  Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs, 781 F.3d 1271, 1288 (11th Cir. 2015).  The hearing officers' decisions were "final agency action[s]" subject to judicial review under the Administrative Procedure Act.  5 U.S.C. § 704.  "Under the Administrative Procedure Act, we must 'hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Black Warrior, 781 F.3d at 1288 (quoting 5 U.S.C. § 706(2)(A)).  "The arbitrary and capricious standard is 'exceedingly deferential.'"  Defs. of Wildlife v. U.S. Dep't of Navy, 733 F.3d 1106,

11

1115 (11th Cir. 2013) (quoting Fund for Animals, Inc. v. Rice, 85 F.3d 535, 541 (11th Cir. 1996)).

An agency action is arbitrary and capricious where (1) "the agency 'relied on factors which Congress has not intended it to consider,'" (2) "the agency 'failed to consider an important aspect of the problem,'" (3) "the agency explained its decision in a way 'that runs counter to the evidence,'" or (4) "the action 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Id. (quoting Miccosukee Tribe of Indians of Fla. v. United States, 566 F.3d 1257, 1264 (11th Cir. 2009)). We must not conduct our "own investigation" or "substitute [our] judgment" for that of the administrative agency, Sierra Club v. Van Antwerp, 526 F.3d 1353, 1360 (11th Cir. 2008), and must limit our review to "the information that was before the agency at the time of its decision," Salmeron-Salmeron v. Spivey, 926 F.3d 1283, 1286 (11th Cir. 2019).

## DISCUSSION

Bajjani raises three issues on appeal. First, he argues that the district court erred in finding as not arbitrary and capricious the first hearing officer's determination that Bajjani's guarantee of the Administration's loan was valid. Second, he contends that the district court erred in finding as not arbitrary and capricious the second hearing officer's determination that it was barred by res judicata from relitigating the validity of the guarantee. And third, he claim that the

12

district court erred in applying an arbitrary and capricious standard of review, as opposed to a de novo review, when assessing the validity of the guarantee and the applicability of res judicata.

### *Validity of the Guarantee*

Bajjani argues that a contract with a federal agency cannot be enforced if the contract is void under the laws of the state in which it is made. Under Georgia law, he contends, a guarantee executed after the original loan obligation—as here—must be founded on new consideration that flows directly to the guarantor. Because "any possible legal consideration that may have flowed to [Bajjani] did not occur as the proposed stock transfer was cancelled immediately following his execution of the Guaranty," Bajjani says, "he cannot be held financially responsible to the [Administration] under the Guaranty [because it] is void and unenforceable under Georgia law." According to Bajjani, this lack of consideration is evidenced by the bankruptcy proceedings where Joe Bajjani indicated that he wholly owned the companies.

We agree with the district court that the Administration's conclusion that the guarantee was a valid obligation was not arbitrary or capricious. First, Bajjani's guarantee provided that he "may not claim or assert any local or state law against [the Administration] to deny any obligation." Under the plain terms of the guarantee,

13

Bajjani could not use Georgia law to defeat the Administration's attempt to enforce the guarantee and garnish his wages.

Second, the Administration had substantial evidence that Bajjani received consideration in exchange for the guarantee. The evidence presented to the first hearing officer included the modification to the loan and the personal guarantee. Those documents showed that the loan was modified when Bajjani, in exchange for his father transferring a forty-nine percent interest in his companies to his son, personally guaranteed the loan. The forty-nine percent interest was valid consideration.

Bajjani argued that his father reneged on the agreement to transfer forty-nine percent of the stock and, as proof, points to the sworn statements made during the bankruptcy proceedings. But the record of the bankruptcy proceedings was not introduced by Bajjani at the first administrative hearing. Bajjani did not rebut the Administration's evidence that he received consideration for the guarantee; indeed, the first hearing officer only had six documents in evidence: (a) "SBA Financial disclosure Statement dated April 27, 2016 and accompanying documents"; (b) "Paycheck stubs, 2014 1040 Federal Income Tax Return, W-2's"; (c) "SBA agency records and copies of the agency's electronic records, which were presented to establish the evidence, amount and past-due status of the debt"; (d) "the Department of Treasury's transaction history and communication log"; (e) "Hearing

14

Request Administrative Wage Garnishment"; and (f) "Notice of Intent to Initiate Wage Garnishment Proceedings."  The hearing officer said those documents were "submitted by [Bajjani] and held by the [Administration]."  Because the bankruptcy record was "information not before [the first hearing officer] at the time he made his decision," we, like the district court, cannot consider it.  There was no evidence that Bajjani did not receive consideration for the guarantee, and the only evidence before the first hearing officer was that he did.  See Salmeron-Salmeron, 926 F.3d at 1286 ("It is a foundational principal of administrative law that a reviewing court must review only the information that was before the agency at the time of its decision in assessing whether that decision was permissible." (citing Camp v. Pitts, 411 U.S. 138, 142 (1973))).

## Res Judicata

Bajjani argues that the second hearing officer was not bound by res judicata because the first hearing was not trial-like.  The first hearing, Bajjani contends, was solely a financial hardship review.  As such, he argues, the first hearing officer could not "address the issue of the validity of the underlying loan or loan guaranty." Because the first hearing was not a full hearing, he says, a subsequent administrative body could not be bound under res judicata.  We disagree.

"[W]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate

15

opportunity to litigate, the courts have not hesitated to apply res judicata . . . ." United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966). However, "res judicata may apply to some administrative proceedings but not others," and "each situation calls for careful examination." Garner v. Giarusso, 571 F.2d 1330, 1336 (5th Cir. 1978). "When [formality in an administrative hearing] is sufficiently diminished, the administrative decision may not be res judicata. The starting point in drawing the line is the observation that res judicata applies when what the agency does resembles what a trial court does." Lake Lucerne Civic Ass'n, Inc. v. Dolphin Stadium Corp., 878 F.2d 1360, 1367 (11th Cir. 1989) (alteration in original) (internal quotation marks omitted).

To determine whether an administrative decision should be given prelusive effect, we look to "the character of the administrative hearing" and "examine the procedural due process . . . afforded to the interested parties." Id. (internal quotation marks omitted). Procedural due process is afforded when there is "due notice, a fair opportunity to be heard in person and through counsel, the right to present evidence, and the right to cross-examine adverse witnesses." Id. In other words, was there a "full hearing." Garner, 571 F.2d at 1336; see also Burney v. Polk Cmty. Coll., 728 F.2d 1374, 1380 (11th Cir. 1984) (noting that a school board that dismissed a public school teacher after a "full hearing" at which plaintiff was represented by counsel

16

had "res judicata effect" (citing Jennings v. Caddo Parish Sch. Bd., 531 F.2d 1331 (5th Cir. 1976))).

The requirements of administrative res judicata have been satisfied. As the district court concluded, the "procedures and processes [were] sufficiently trial-like" because Bajjani had due notice, was given ample opportunity to be heard, was represented by counsel, was afforded several occasions to present evidence, and, if needed, allowed to present witnesses. The first hearing was a full administrative hearing, and was not limited to financial-hardship issues, as Bajjani claims. The Administration informed Bajjani that his hearing would be an "Administrative Wage Garnishment Hearing." During an administrative wage garnishment hearing, a person may challenge the Administration's decision "due to one or more of the following usual reasons: (1) Existence of the Debt[;] (2) Amount of the Debt[;] (3) Terms of the Garnishment[; and] (4) Financial Hardship." At the first hearing, Bajjani challenged the amount of debt he owed and the financial hardship the garnishment would cause him.

Bajjani argues that, even if res judicata might have properly applied, it could not apply at the second hearing because the hearing officer allowed the appeal of the second wage garnishment to proceed to hearing, received newly presented evidence, and reopened the issue. As support, Bajjani cites to Cherry v. Heckler, 760 F.2d 1186 (11th Cir. 1985), for the proposition that a "final decision by [an administrative

17

agency] will be deemed reopened if it is 'reconsidered on the merits to any extent and at any administrative level.'" Id. at 1189 (quoting McGowan v. Harris, 666 F.2d 60, 65 (4th Cir. 1981)).    However, in Cherry, we said that a subsequent administrative law judge does not reopen a case when she merely "look[s] far enough into the proffered factual and legal support to determine whether it is the same claim." Id. (internal quotation marks omitted). After assessing the evidence presented at the second hearing, and only then, may the administrative law judge determine whether the case should be reopened as a "discretionary matter." Id. (internal quotation marks omitted).

Here, the second hearing officer found out about the first hearing officer's decision while reviewing the newly presented evidence. The second hearing officer evaluated this new evidence and determined that res judicata applied. This did not reopen the case. As we explained in Passopulos v. Sullivan, 976 F.2d 642 (11th Cir. 1992), "an ALJ does not reopen a prior final decision when the ALJ evaluates evidence presented in support of the original application solely to make a reasoned determination of its res judicata effect on the second application." Id. at 646.

Bajjani finally argues that administrative res judicata is not to be rigidly applied and it shouldn't be applied because the guarantee was void. Bajjani is right that res judicata "applies even more flexibly in the administrative context than it does when a second court of competent jurisdiction is reviewing the decision of a first

18

court," <u>Maldonado v. U.S. Att'y Gen.</u>, 664 F.3d 1369, 1377 (11th Cir. 2011), and

that the doctrine will not be "automatically and rigidly applied in the face of contrary

public policy," <u>Quinones Candelario v. Postmaster Gen.</u>, 906 F.2d 798, 801 (1st Cir.

1990); <u>see also</u> <u>Tipler v. E.I. duPont deNemours & Co.</u>, 443 F.2d 125, 128 (6th Cir.

1971) (noting that the rule of res judicata "[is] qualified or rejected when [its]

application would contravene an overriding public policy").  But Bajjani points to

no public policy that will be contravened by the application of res judicata where a

party guarantees a loan without consideration, and we do not see any apparent policy

that will be violated if res judicata is applied.

*District Court Standard of Review*

Bajjani argues that, where the underlying agency action contravened

applicable law, the district court should have reviewed his appeal de novo rather than

under the arbitrary-and-capricious standard.  But, as the Administration asserts,

"[Bajjani] misunderstands the contours of judicial review under the APA."

> In <u>all</u> cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements.  5 U.S.C. §§ 706(2) (A), (B), (C), (D) (1964 ed., Supp. V).  In certain narrow, specifically limited situations, the agency action is to be set aside if the action was not supported by 'substantial evidence.'  And <u>in other equally narrow circumstances</u> the reviewing court is to engage in a de novo review of the action and set it aside if it was 'unwarranted by the facts.'  5 U.S.C. §§ 706(2)(E), (F) (1964 ed., Supp. V).

19

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413–14 (1971) (emphasis added), abrogated on other grounds by Califono v. Sanders, 430 U.S. 99 (1977); see also Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("The reviewing court is not generally empowered to conduct a de novo inquiry into the [agency] matter being reviewed and to reach its own conclusions based on such an inquiry.").    Under section 706(2)(F), "de novo review of whether the [Administration's decisions] were 'unwarranted by the facts' is authorized . . . in only two limited circumstances": (1) "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate" and (2) "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action."  Overton Park, 401 U.S. at 415 (quoting 5 U.S.C. § 706(2)(F)).  Neither narrow circumstance applies here.  Although the Administration's decisions were adjudicatory in nature, its fact-finding procedures were not inadequate and the validity of the guarantee was before the first hearing officer.

## CONCLUSION

Because the Administration did not arbitrarily and capriciously decide Bajjani's claims, we affirm the district court's summary judgment for the Administration.

**AFFIRMED**.

20