[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 20-13073

————————————————

GOGA DJADJU,

Petitioner-Appellant,

*versus*

JUAN A. LOPEZ VEGA,
Assistant Field Office Director, ICE Officer in
Charge of Broward Transitional Center,
FIELD OFFICE DIR. JIM MARTIN,
Field Office Director, Miami Field Office,
Immigration Customs Enforcement,
ACTING DIRECTOR, U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,
ACTING SECRETARY OF HOMELAND SECURITY,

2                    Opinion of the Court                    20-13073

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cv-61060-WPD

_____

Before NEWSOM and MARCUS, Circuit Judges, and LAWSON,[*] District Judge.

MARCUS, Circuit Judge:

Goga Djadju, a native and citizen of North Macedonia, appeals the dismissal or, alternatively, the denial of his 28 U.S.C. § 2241 habeas petition seeking release from an alleged "unlawful and indefinite" detention by Immigration and Customs Enforcement ("ICE"). Djadju claims that his detention by ICE officials violated the Due Process Clause of the Fifth Amendment, because it exceeded the "presumptively reasonable" 180-day period established in *Zadvydas v. Davis*, 533 U.S. 678 (2001). The district court denied Djadju relief, concluding, among other things, that the delay in his removal did not violate *Zadvydas* because Djadju had sought and obtained an administrative stay of his removal proceedings. Djadju

_____

[*] Honorable Roger H. Lawson, Jr., United States District Judge, for the Middle District of Georgia, sitting by designation.

asks us to decide whether the district court properly determined that the administrative stay of removal affected his *Zadvydas* claim. However, certain critical events have taken place since Djadju commenced this habeas petition and since the district court decided the matter that have rendered his *Zadvydas* claim moot.

In November 2019, the Board of Immigration Appeals ("BIA") affirmed the Immigration Judge's denial of Djadju's applications for withholding of removal and other immigration relief, and his administrative removal order became final. Shortly thereafter, the BIA granted Djadju's motion to reopen his removal proceedings, based on his marriage to an American citizen, and granted him an administrative stay of removal pending the resolution of that motion. Several weeks later, ICE conducted a post-order custody review and concluded that Djadju should remain in custody because he did not establish that his release would not pose a danger to the community or that he was not a significant flight risk pending removal. Nevertheless, in November 2020, ICE officials conditionally released Djadju from detention under an order of supervision. He was placed on an electronic monitoring system, where he remains as of the writing of this opinion. Meanwhile, in a separate appeal resolved in January 2021, a panel of this Court denied Djadju's petition for review of the agency's original denial of immigration relief and final administrative removal order. *See G.D. v. U.S. Att'y Gen.*, 843 F. App'x 156 (11th Cir. 2021) (unpublished).

Upon learning of Djadju's conditional release, we ordered the parties to file supplemental briefs addressing the impact, if any, of his release from detention. After reviewing the full record and holding oral argument, we dismiss this appeal and vacate the district court's judgment because the case has become moot.

We review *de novo* the denial of a § 2241 petition. *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019). Although our jurisdiction to consider challenges under § 2241 to an alien's detention is limited, we have jurisdiction to address a challenge to the legal basis of the detention, including constitutional challenges. *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006).

Section 241 of the Immigration and Nationality Act ("INA") governs the detention and post-release supervision of aliens subject to final orders of removal. 8 U.S.C. § 1231(a). The statute provides that when an alien receives a removal order, the Attorney General has 90 days to remove him from the United States. *Id.* § 1231(a)(1)(A). This "removal period" begins on the latest of three dates: "[t]he date the order of removal becomes administratively final"; "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; and "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id.* § 1231(a)(1)(B). The removal period is extended beyond 90 days if the alien fails to make good-faith efforts to obtain necessary travel documents or otherwise "acts to prevent [his] removal." *Id.* § 1231(a)(1)(C); *see also* 8 C.F.R. § 241.4(g)(5)(ii)

(providing the same). In that case, the removal period is extended until the alien complies with the statutory obligations. 8 C.F.R. § 241.4(g)(1)(ii). If he does, ICE has a reasonable period of time to effect the alien's removal. *Id.* An alien may use the habeas corpus provision found in 28 U.S.C. § 2241 to challenge his post removal-period detention. *Zadvydas*, 533 U.S. at 688. That is the route Djadju travels here.

However, Article III of the Constitution "limits the jurisdiction of federal courts to 'cases' and 'controversies,'" and the justiciability doctrine's main components include mootness. *See Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (quotation marks omitted). A cause of action becomes moot "when it no longer presents a live controversy with respect to which the court can give meaningful relief." *See id.* (quotation marks omitted).

Because mootness is jurisdictional, we are required to resolve any question implicating the doctrine before we assume jurisdiction over an appeal. *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008). "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed." *Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1118 (11th Cir. 1995) (quotation marks omitted). When we dismiss a case as moot on appeal, we also must vacate the district court's order -- a practice that "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of

which was prevented through happenstance." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1340 (11th Cir. 2001) (quotation marks omitted). In considering mootness, we look at the events at the present time, not at the time the complaint was filed or when the federal order on review was issued. *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001).

"As a general rule, a habeas petition presents a live case or controversy only when a petitioner is in custody." *Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1289 (11th Cir. 2019); *see also* 28 U.S.C. § 2241(c)(3)). The Supreme Court has held that the "in custody" requirement of § 2241 is satisfied if restrictions have been placed on a petitioner's freedom of action or movement. *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963). This means that once a petitioner's custodial sentence has expired, "some concrete and continuing injury . . . some 'collateral consequence' . . . must exist if the suit is to be maintained." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Salmeron-Salmeron*, 926 F.3d at 1290 (extending the "collateral consequences" doctrine to habeas petitions brought in the immigration context).

Ultimately, the burden remains on the petitioner to establish that his case still presents a live "case or controversy" by demonstrating that a collateral consequence of his imprisonment persists after his release. *See Mattern v. Sec'y for Dep't of Corrs.*, 494 F.3d 1282, 1285 (11th Cir. 2007). So where a habeas petitioner has been released from detention -- when, for example, he is removed from the country -- and he has not raised a challenge to a "collateral

consequence," we've held that his appeal of the denial of his habeas petition has become moot. *See Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1243 (11th Cir. 2002) ("Soliman's appeal [of an order denying his release from his detention] is now moot because there exists no active case or controversy . . . [s]ince he was removed from the United States to Egypt on June 11, 2001 [and] is no longer being detained by the INS"); *Salmeron-Salmeron*, 926 F.3d at 1290 (citing *Soliman* and holding that a habeas petition filed by a subsequently deported alien who challenged only his detention, not his final order of removal, was moot); *Sopo v. U.S. Att'y Gen.*, 890 F.3d 952, 953 (11th Cir. 2018) (vacating prior opinion concerning whether § 1226(c) detainees must be afforded bond hearings and dismissing as moot based on petitioner's removal).

The fundamental question is whether events have occurred that deprive us of the ability to give the appellant meaningful relief. *Al-Arian*, 514 F.3d at 1189. Here, Djadju has asked the federal courts for only one form of relief: to be immediately released from custody as a result of his "ongoing prolonged detention."[1] Since

---

[1] The prayer for relief in his habeas petition stated in full reads this way:

> WHEREFORE, Petitioner prays that the Court grant the following relief:
>
> (1) Assume jurisdiction over this matter;
>
> (2) Pursuant to 28 U.S.C. § 2243 issue an order directing Respondents to show cause why the writ of habeas corpus should not be granted;
>
> (3) Order a hearing on the Petition as soon as is possible;

Djadju already has been released from custody, his prayer for relief has been satisfied. Notably, even in his briefing to us, Djadju has not argued that the order of supervision is a form of custody for habeas purposes, nor that he is suffering any collateral consequences resulting from the order. Nor has he even told us what his conditions of release are. Without any challenge to a collateral consequence -- indeed, without any suggestion from the petitioner that he is suffering from any constitutional harm, other than the detention itself -- we are unable to provide him with any remedy pursuant to § 2241. *See Troiano*, 382 F.3d at 1282.

Since we can offer Djadju no relief, we find ourselves with a classic case of mootness: "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to

---

(4) Grant Mr. Djadju a writ of habeas corpus directing the Respondents to immediately release Mr. Djadju from custody;

(5) Enjoin Respondents from transferring Mr. Djadju out of the jurisdiction of the ICE Miami Field Office during the pendency of these proceedings and while Mr. Djadju remains in Respondents' custody; and

(6) Award Mr. Djadju attorney's fees and costs under the Equal Access to Justice Act (EAJA), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified under law; and

(7) Grant any other and further relief as the Court deems just and proper.

In substance, these seven clauses only asked for Djadju to be released from custody, which has already happened. His petition did not seek any relief concerning his conditions of release.

give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed. [In these circumstances], dismissal is required because mootness is jurisdictional. Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Id.* (quotation marks omitted).  The mootness require-ment -- as derived from the Constitution's case-or-controversy lim-itation -- "goes to the heart of our constitutional doctrine of the separation of powers and the proper role of the judiciary." *Id.*  We cannot wade into any question the petitioner has raised.  Thus, if we were to opine about whether Djadju could be re-detained, whether the government is prepared to remove him immediately, or whether the administrative stay of his removal proceedings af-fects his claims -- all the while he is released from custody and he is not claiming any collateral consequence arising from his order of release -- we would be offering a wholly advisory opinion.  The Constitution has prohibited us from doing this.

Anticipating this, Djadju argues that his release from cus-tody was merely the result of the government's "voluntary cessa-tion" of illegal conduct, and, thus, that his release should not bar his appeal from proceeding on mootness grounds.  Ordinarily, a party's "voluntary cessation" of conduct challenged in a lawsuit does not moot a case; in those instances, the party responsible for the allegedly illegal conduct bears the burden of showing that it is absolutely clear the allegedly wrongful behavior could not reason-ably be expected to recur.  *Keohane v. Fla. Dep't of Corr. Sec'y*, 952

F.3d 1257, 1267 (11th Cir. 2020), *pet. for cert. denied*, (U.S. Oct. 4, 2021) (No. 20-1553).

But we take a somewhat different approach when a *governmental entity* voluntarily ceases the challenged action. Because "there is a presumption that the government will not later resume the action," the opposing party must show a reasonable expectation that the government will reverse course. *Walker v. City of Calhoun*, 901 F.3d 1245, 1270 (11th Cir. 2018); *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004) ("[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur. . . [C]essation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties. . . Courts are more apt to trust public officials than private defendants to desist from future violations" (quotation marks and internal citations omitted)); *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–29 (11th Cir. 2004) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities."). Notably, however, we have never addressed the "voluntary-cessation" doctrine in the habeas immigration context, and

it is not clear that it would apply to a claim like this, which is tied to a petitioner's custody.[2]

Where the "voluntary-cessation" exception to mootness does apply, we examine three factors to determine whether a reasonable expectation that the government will reverse course exists, including whether: (i) the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate jurisdiction; (ii) the government's decision to terminate the challenged conduct was unambiguous, i.e., permanent and complete; and (iii) the government has consistently maintained its commitment to the new policy or legislative scheme. *Walker*, 901 F.3d at 1270. Those considerations are not to "be viewed as exclusive nor should any single factor be viewed as dispositive," so a court should find a case moot "when the totality of the circumstances persuades the court that there is no reasonable expectation that the government entity will reenact the challenged policy." *Keohane*, 952 F.3d at 1268 (quotation marks omitted and alteration accepted). Moreover, "[t]he

---

[2] This remains an open question for some of our sister circuits as well. *See, e.g.*, *Riley v. I.N.S.*, 310 F.3d 1253, 1257 (10th Cir. 2002) (suggesting that the "exception of voluntary cessation may be applicable" where an alien has been released from INS custody, but avoiding the issue); *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (noting that Supreme Court has never applied the voluntary-cessation exception in a habeas case, and suggesting, without deciding, that the "voluntary-cessation" exception is more appropriate in other contexts, where "a type of judgment with continuing force, such as an injunction, is sought") (quotation marks omitted).

remote possibility that an event might recur is not enough to over-come mootness." *Al Najjar*, 273 F.3d at 1336.

Here, we need not and do not decide whether the voluntary-cessation doctrine applies in the habeas immigration context be-cause even if it did, it has not been satisfied. For starters, the gov-ernment released Djadju from custody under an order of supervi-sion, following the procedures set forth in 8 C.F.R. § 241.4, *after* the district court denied his habeas petition, suggesting that there was no link between this lawsuit and its action. Further, the gov-ernment has described Djadju's detention as having "ceased," and, as of now, more than fifteen months have passed since Djadju's re-lease in November 2020. *See Walker*, 901 F.3d at 1270. The gov-ernment also conceded at oral argument that before it could re-detain Djadju, it would need to overcome various administrative hurdles -- showing, for example, that Djadju violated the order of supervision, or that he would likely be removed in the reasonably foreseeable future -- making it unlikely that he would be re-de-tained while the administrative stay is in place. *See Honig v. Doe*, 484 U.S. 305, 320 (1988) (recognizing unwillingness to assume that a party seeking relief from injury inflicted by authorities will en-gage in conduct that will place him at risk of that injury).

Thus, as we see it, there's no reasonable basis for us to be-lieve that Djadju will be re-detained unlawfully upon termination of this suit. *See Troiano*, 382 F.3d at 1284. Moreover, the govern-ment conceded at oral argument that if he is re-detained, Djadju could bring a new habeas action, at which time his claims would

be fully vetted.   But until that point, any opinion concerning Djadju's challenge to his detention "would be purely advisory." *See Soliman*, 296 F.3d at 1243 (quotation marks omitted).  "Quite simply, there is nothing for us to remedy, even if we were disposed to do so." *Id.* (quotation marks omitted).

Thus, we lack jurisdiction to consider the merits of this appeal, and we dismiss the case as moot.  We also vacate the district court's order dismissing, or alternatively denying, his petition. *See Al Najjar*, 273 F.3d at 1336.

DISMISSED;    DISTRICT    COURT    JUDGMENT VACATED.